PEOPLE ex rel. BLACKINTON CO. v. ROBERTS, Comptroller.

(Supreme Court, Appellate Division, Third Department. April 14, 1896.)

TAXATION—EXEMPTIONS—MANUFACTURING CORPORATIONS.
    A domestic manufacturing corporation whose mills are located in another state, where it does all its manufacturing, while the balance of its business is done in New York, is not exempt from the franchise tax in New York, under Laws 1880, c. 542, exempting from such tax all domestic manufacturing corporations "wholly engaged in carrying on manufacture within this state."

Certiorari by the Blackinton Company against James A. Roberts, comptroller of the state of New York, to review the action of the comptroller in assessing a franchise tax against relator, under Laws 1880, c. 542, and the acts amending the same. Quashed.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Charles Howard Williams, for relator.

T. E. Hancock, Atty. Gen. (G. D. B. Hasbrouck, Dep. Atty. Gen., of counsel), for respondent.

PARKER, P. J. The relator in the case is a domestic corporation, organized for the purpose of manufacturing woolens and textile fabrics. In manufactures all its products at Blackinton, in the state of Massachusetts. Its mills are located there, and all of its capital stock, viz. $600,000, was issued in payment for the same, and for stock and supplies contained therein, at the time the company was organized. All the rest of its business is carried on in the city of New York. It has been assessed by the comptroller as a corporation liable to a franchise tax, under the provisions of chapter 542 of the Laws of 1880, and several acts amendatory thereof, and the matter now comes before us upon a certiorari to review such assessment. The relator claims that it comes within the exemption from such tax contained in section 3 of such act, as amended by chapter 522 of the Laws of 1890. The comptroller claims that it is not within any exemption there provided for. A careful reading of that section, so far as it is applicable to this case, and as it is construed by the court of appeals in People v. Wemple, 129 N. Y. 558, 29 N. E. 812, and in Tiffany's Case, 144 N. Y. 166, 38 N. E. 990, shows that it provides as follows:

Every corporation, now and hereafter, incorporated, or formed under the laws of this state, shall be liable to pay a tax upon its franchise or business, unless it shall be a manufacturing corporation wholly engaged in carrying on manufacture within this state.

The relator is a corporation. It is also a manufacturing corporation, and the precise question presented is, therefore, this: Is it "wholly engaged in carrying on manufacture within this state?" No particular consideration need be given to the word "wholly" in this case, because it is plain that the corporation has no other business than that of manufacturing, and also that no part of its raw material or products is made up or manufactured in this state. The question presented is not as to the force and effect of the word "wholly," but as to the meaning and purpose of the phrase "carrying on manufacture within this state." The relator's general office, its sales, its bank account, and the general control and management of its business, are all carried on in this state; but its manufacturing plant, its employés in the business of manufacturing its goods, the work which they perform, and the wages paid to them, are neither of them located or carried on within this state. In other words, a large part of the business is carried on within this state, but the entire business of manufacturing its products is carried on in another state. Within the literal reading of this section, it is clear that the relator is not exempted from the franchise tax. It is not engaged in carrying on manufacture within this state.

The relator's counsel, however, insists that, when a domestic manufacturing corporation carries on all its general business in this state, it is too narrow a construction of the law to hold it liable to

the tax simply because its shops are located and its manufacturing done in another state.    But that suggests the question:    Why is a manufacturing corporation exempted from the tax, any more than any other corporation?    And the principal reason that naturally occurs to us, and the one that has been repeatedly recognized by the courts, is the desire on the part of the state to bring within its borders the advantages which attend the maintaining of large manufacturing establishments, and the employment of many men therein. Thomas Clock Co. Case, 133 N. Y. 323, 326, 31 N. E. 238;  People v. Horn Silver Min. Co., 105 N. Y. 76, 83, 11 N. E. 155.   And the very language used in expressing this exception also suggests such a conclusion.    It is not given to all "manufacturing corporations,"—nor even to those who are engaged carrying on business within this state; but the manufacturing corporation must also be "engaged in carrying on manufacture within the state."   If this relator was a mining, instead of a manufacturing, corporation, and did all of its business in this state, except that it did all of its mining in another state, it would seem plain, from the language of section 3, that it did not come within the exception; and yet the requirement to manufacture is as positive as is the requirement to "mine ores" within the state.   Although it has been held that a distinction exists between a domestic and a foreign corporation, so far as a liability to pay any tax under this section is concerned (see People v. Wemple, 129 N.. Y. 558, 29 N. E. 812), yet, so far as the "exemption clause" is concerned, I am unable to discover any distinction whatever between them.   It applies to both alike.   In either case it must be a manufacturing corporation engaged in carrying on manufacture within the state.

If I am correct in this conclusion, this question before us has been already decided by the court of appeals.   In the Roebling Case, 138 N. Y. 582, 34 N. E. 386, a manufacturing corporation doing a large business within this state sought to evade the tax, on the ground that it was engaged in carrying on manufacture within this state. In fact, its manufacturing was done in another state, and a very slight pretense of manufacturing was carried on in this state.    The court held that, although doing business here, it was not carrying on manufacturing here, and in the opinion of the court it is said: "It must be made to appear that 'actual manufacturing operations' are carried on here, in the ordinary sense and meaning of the term." See, also, People v. Horn Silver Min. Co., 105 N. Y. 76–82, 11 N. E. 155;  People ex rel. Seth Thomas Clock Co. v. Wemple, 133 N. Y. 323, 31 N. E. 238.   These decisions are authority for holding that not only must the corporation seeking the exemption be a manufacturing corporation, but that it must carry on its "actual manufacturing operations" within the state.   Thus, upon reason and authority, we conclude that the relator is not within the exemption provided by section 3.    It carried on no manufacturing operations whatever within the state.

The remaining question to be considered is whether the comptroller erred in fixing the amount of the relator's capital stock employed

within this state. It appears that a portion of the property for which the capital stock was issued was "stock wrought and in process, and raw materials," at the shops in Blackinton. As fast as such was made into goods, it was sent to New York City, and held by the company until sold. When sold, the proceeds went into its bank account, or were expended for other material, which, in its turn, was worked into goods, and shipped to the company's custody in New York. We have no doubt that, under such circumstances, the manufactured goods and the company's bank account in New York City represented its capital stock employed within this state. People v. Wemple, 131 N. Y. 64, 29 N. E. 1002; People v. Campbell, 138 N. Y. 543, 34 N. E. 370; People v. Wemple, 60 Hun, 225, 14 N. Y. Supp. 859; Id., 129 N. Y. 558, 29 N. E. 812. And, there being nothing in the case to indicate that the valuation fixed by the comptroller was excessive, we see no reason for interfering with the decision. People v. Campbell, 80 Hun, 466, 30 N. Y. Supp. 472. The decision of the comptroller, therefore, must be sustained.

Writ of certiorari quashed, and the determination of the comptroller affirmed, with $50 costs and disbursements. All concur.