Judgment of conviction and order denying motion for a new trial affirmed.

---

THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE EMPIRE STATE DAIRY COMPANY, Appellant, *v.* WILLIAM SOHMER, as Comptroller of the State of New York, Respondent.

Tax — franchise tax for privilege of doing business — exemption of capital actually employed in manufacturing — process of pasteurizing milk not manufacturing within meaning of statute and authorities defining manufacture — tax to be imposed on domestic corporation whose capital has been increased by stock dividend.

1. Under the statute (Tax Law [Cons. Laws, ch. 60], § 183) a manufacturing corporation, to the extent of its capital actually employed in this state in manufacturing, is exempt from the tax

imposed for the exercise of its corporate franchise during the preceding year, but the process of pasteurizing milk, by which impurities are removed therefrom and dangerous germs destroyed without injury to the milk as food, cannot within any controlling principle or important decision which has been applied to the definition of that term as used in the statute in question or any kindred enactments be held to be manufacturing, and hence a domestic corporation engaged in the business of collecting, pasteurizing and marketing milk is not exempt from the payment of such tax.

2. Where a domestic business corporation declared a stock dividend of one hundred per cent, thereby doubling its capital stock, such corporation is liable for a franchise tax, under section 182 of the Tax Law, assessed upon the par value of its stock, before it was increased by the stock dividend, at the rate of one-quarter of a mill for each one per cent of dividend declared thereon, and is liable, also, for a tax assessed upon the stock issued as a dividend at the rate of three-quarters of one mill upon the amount of such stock.

3. The authorities, both state and foreign, relating to and deciding what is "manufacturing," within the meaning of the statute (Tax Law [Cons. Laws, ch. 60], § 183) exempting manufacturing corporations from the franchise tax, collated and discussed.

*People ex rel. Empire State Dairy Co. v. Sohmer*, 164 App. Div. 918, affirmed.

(Argued April 10, 1916; decided May 9, 1916.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered September 24, 1914, which confirmed a determination of the defendant state comptroller in assessing against the relator a corporate franchise tax for the year ending October 31, 1911.

The facts, so far as material, are stated in the opinion.

*Alva Seybolt* for appellant. So far as the relator is engaged in the manufacture of butter, cheese, condensed milk, pasteurized milk, etc., it is a manufacturing corporation. (*People ex rel. Western El. Co. v. Campbell*, 145 N. Y. 587; *People ex rel. Tiffany v. Campbell*, 144 N. Y. 166; *People ex rel. Matheson v. Roberts*, 158 N. Y. 162; *People ex rel. Am. Soda Fountain Co. v. Roberts*,

158 N. Y. 168; *N. E. D. M. Co.* v. *Roberts*, 155 N. Y. 411.) The pasteurization of milk is a manufacturing process, and pasteurized milk is a manufactured product. (*City of New Orleans* v. *Le Blanc*, 34 La. Ann. 597; *Carlin* v. *Assurance Co.*, 57 Md. 526; *People ex rel. B. E. M. Co.* v. *Wemple*, 129 N. Y. 543; *Schriefer* v. *Wood*, 5 Blatchf. 215; *State* v. *Am. Sugar Refining Co.*, 108 La. Ann. 603; *Hawes* v. *Petroleum Co.*, 101 Mass. 385; *Comm.* v. *National Oil Co.*, 157 Penn. St. 516; *People ex rel. S. W. Co.* v. *Roberts*, 20 App. Div. 514; *New Orleans* v. *Ernst*, 35 La. Ann. 746.)

*Arthur H. Masten* for Borden's Condensed Milk Company, intervening. Pasteurization is manufacturing within the meaning of section 183 of the Tax Law. (*People ex rel. Blackinton Co.* v. *Roberts*, 4 App. Div. 388; 151 N. Y. 652; *People ex rel. W. El. Co.* v. *Campbell*, 145 N. Y. 587; *People* v. *H. S. M. Co.*, 105 N. Y. 76; *Nassau G. L. Co.* v. *City of Brooklyn*, 89 N. Y. 409; *People ex rel. B. E. M. Co.* v. *Wemple*, 129 N. Y. 543; *State* v. *Am. Sugar Refining Co.*, 108 La. 603; *Hawes* v. *Petroleum Co.*, 101 Mass. 385; *Matter of Rheinstrom's Sons & Co.*, 207 Fed. Rep. 118; 221 Fed. Rep. 829; *People ex rel. U. P. T. Co.* v. *Roberts*, 145 N. Y. 375; *People* v. *Knickerbocker Ice Co.*, 99 N. Y. 181; *People ex rel. N. E. D. M. & W. Co.* v. *Roberts*, 155 N. Y. 408.)

*Egburt E. Woodbury, Attorney-General* (*Franklin Kennedy* of counsel), for respondent. Pasteurization of milk is not manufacturing within the purview of the provisions of section 183 of the Tax Law. (*People* v. *Horn S. M. Co.*, 105 N. Y. 76; *People* v. *Knickerbocker Ice Co.*, 99 N. Y. 181; *People ex rel. N. E. D. Meat & Wool Co.* v. *Roberts*, 155 N. Y. 408; *People ex rel. U. P. T. Co.* v. *Roberts*, 145 N. Y. 375; *Hartraupt* v. *Wiegmann*, 121 U. S. 609; *Comm.* v. *Dyer Quarry Co.*, 95 Atl. Rep. 797.) The comptroller correctly assessed a tax

on the new capital stock. (*People ex rel. Pullman Co. v. Comptroller*, 130 App. Div. 332; 198 N. Y. 605; *People v. Home Ins. Co.*, 92 N. Y. 328.)

HISCOCK, J. Under the statute governing that subject a tax was assessed against the relator, a domestic corporation, for the exercise of its corporate franchise during the year expiring October 31, 1911, of which it complains. Subject to a minor objection which will be considered later, the question whether said assessment was correct or not will be determined by the answer to be given to the further question whether the pasteurization of milk in which relator employed a large part of its capital is a manufacturing process. If such business was one of manufacture the relator was entitled to exemption from taxation of so much of its capital as was employed in pasteurizing milk and selling the same, and the assessment of which it complains should be materially reduced. If in pasteurizing and selling milk it was not engaged in manufacturing, then, subject to the minor complaint above mentioned, the assessment was correct and the relator has no just complaint to make.

There is no dispute about the facts which present the question before us. The relator collects, pasteurizes and markets a large amount of milk. Raw milk is liable to contain various kinds of impurities, bacteria and germs coming from unclean conditions surrounding the drawing of the milk or from the unhealthful condition of the cows or of the persons attending or milking them. In order to free the milk from these impurities and to prevent the ill consequences liable to result from their presence relator subjects it to the process of pasteurization. For this purpose by the use of a somewhat complicated system of machinery it is passed through several processes. It is warmed and passed through a clarifier, where by the use of centrifugal force the heavier impurities are separated from it. It is then placed in tanks, where it is subjected to a mixing

process in order to secure a uniform quality and condition of the milk. It is then subjected in a so-called regenerative pasteurizer and in tanks to a given degree of heat continued for some time for the purpose of killing germs. It is then consecutively passed through processes of cooling and aeration in order to allow disagreeable gases and odors to escape and to destroy bacteria which had survived the preceding processes and finally it is placed in bottles properly cleaned ready for the market.

The purposes and result of pasteurization as thus practiced are thus described and claimed by the relator's counsel in his brief. He says: "It must be borne in mind that the object of pasteurization is to remove impurities and destroy all dangerous germs without injury to the milk as a pleasant and nourishing food." And again, "By the processes above described not only natural milk, just as it comes from the cow, always containing bacteria, * * * but also milk contaminated after leaving the cow's udder with the filth of the stable, * * * is altered into a safe and clean food without losing any of its palatable and nourishing qualities, in fact a new and artificial product." In the light of these statements and of the description of the processes through which the milk is passed and of the results obtained thereby, it is perfectly apparent that the object and result of pasteurization are to free milk from germs and foreign substances of various kinds without destroying or changing the inherent and essential qualities of the milk itself. There is no purpose by the application of any foreign substance to change its superficial appearance or by any method to alter its substantial form and character as would be the case if it were made into butter or cheese. It is entered upon the process as milk, and it is taken therefrom as milk. The only change accomplished has been to relieve it from objectionable matter which is not properly an inherent part thereof, and thereby to make it more fit for those purposes to which milk is naturally devoted.

We do not think that such a process can be regarded as manufacturing under the statute within any principle or decision which has been applied to the definition of that term as used in the statute in question or any kindred enactments. In reaching this conclusion we accept the view urged by counsel for the appellant and the intervenor that the exemption from taxation which we are considering was framed by the legislature for the purpose of encouraging the business of manufacturing within the state, and that in determining whether a given case is within the exemption we ought to consider and give weight to the policy of the legislature in adopting the same. (*People ex rel. Blackinton Co.* v. *Roberts*, 4 App. Div. 388; affirmed on opinion below, 151 N. Y. 652; *People ex rel. Brush Elec. Mfg. Co.* v. *Wemple*, 129 N. Y. 543.)

But doing this we are still unable to discover as the result of pasteurization any such degree of change in the form, nature or intended use of milk when compared with its original condition as has been made the basis for holding in other cases that the process producing such change could be regarded as one of manufacture. The cases cited by the relator for the purpose of establishing the contrary proposition deal with processes of alteration in the character and proposed use of the article being operated on which for the most part are clearly if not radically different than the one here being considered.

In *People ex rel. Brush Elec. Mfg. Co.* v. *Wemple* (129 N. Y. 543, 552, 555) it was being determined whether the business of generating electricity and supplying the same to customers for lighting purposes was a manufacturing business. It seems difficult to understand how it could be seriously urged that it was not and the court so held. In the course of so holding some things were said which seem to define a test with which the present relator cannot comply. Referring to the argument there being made that the corporation did

not produce anything which in a certain sense or in some form did not exist before, it was written, "That, however, is true of most if not all manufacturing operations. The application of labor and skill to materials that exist in a natural state, gives to them a new quality or characteristic and adapts them to new uses, and the process by which this result is brought about is called manufacturing, whether the change is accomplished by manual labor or by means of machinery." And again, "The materials from which all manufactured things originate exist in a natural state; but the manufacturer, by the application to these materials of labor and skill, gives to them a new and useful property. The electricity which is generated and transmitted by the operations of the relator and which, under its manipulations, illuminates houses and streets, is a very different thing from that mysterious element that is said to pervade nature."

The same course of reasoning necessarily led to the decision in *Nassau Gas Light Company* v. *City of Brooklyn* (89 N. Y. 409), that the company engaged in producing and distributing gas was a manufacturing corporation.

Nearer in some of their features to relator's case as it seems to me are the cases *Matter of Alaska Amer. Fish Co.* (162 Fed. Rep. 498); *State* v. *Amer. Sugar Refining Co.* (108 La. 603); *Matter of Rheinstrom & Sons Co.* (207 Fed. Rep. 119); *People ex rel. Standard Wood Co.* v. *Roberts* (20 App. Div. 514).

But these cases, even if accepted by us as authorities of weight, may be distinguished from the present one.

In *Matter of Alaska American Fish* Co. (162 Fed. Rep. [Dist. Court of Washington] 498) it was held that "catching, *preserving* by salt and marketing fish" was manufacturing. It is simply stated in support of this holding without argument or authorities, "Fish as a commodity of merchandise requires the application of process for its preservation." It is a matter of common

206 People ex rel. E. S. Dairy Co. *v.* Sohmer.

[218 N. Y.]                Opinion, per Hiscock, J.                [May,

knowledge, however, that the process referred to in the opinion is a very extensive one and that the preserved fish finally placed on the market is widely different than such fish in their natural state. (*Matter of Rheinstrom & Sons Co.*, 207 Fed. Rep. 119, 156.)

In *State* v. *American Sugar Refining Co.* (108 La. 60) it was held that one engaged in refining sugar was a manufacturer within the terms of a statute exempting manufacturers from the payment of certain taxes. It would occupy too much space to state even in a summary manner for the purpose of distinguishing that case the various processes through which raw sugar is passed for the purpose of converting it into the refined commercial article with which we are familiar. It seems to me that a consideration of those processes as described in the opinion makes it perfectly evident that they create a finished article which differs in condition, character and form and use from the original raw product in a manner and degree which find no analogy in the relation between raw and pasteurized milk. When one contemplates the difference between the raw, impure sugar, unfit for any ordinary use, and the final, cleansed, whitened and grained product described in the opinion, it is difficult to see how there could be real doubt that the processes producing such change amounted to manufacturing as it has been quite universally defined.

In the same manner the case of *Matter of Tecopa Mining & Smelting Co.* (110 Fed. Rep. 120), wherein it is held that the process of smelting and refining ores constitutes a manufacturing process, is to be distinguished from the present case.

In *Matter of Rheinstrom & Sons Co.* (207 Fed. Rep. 119) it was held by the District Court of Kentucky that the production of "Maraschino Cherries" as therein described was a manufacturing process under the Kentucky statute giving priority to certain classes of creditors of a manufacturing establishment. It appeared that

cherries grown abroad and already subjected to two processes for the purpose of bleaching and preserving them, were by the bankrupt subjected to ten more processes amongst which were those of coloring, sweetening, cooking and flavoring them. The district judge in a very elaborate opinion reviewing, distinguishing and criticising many opinions took as the basis of his decision the principle that in order to be a manufacturer one must be a "maker" who is the "efficient cause of the coming into existence of something that did not exist before," and within that principle he reached the conclusion that the processes of coloring, sweetening, cooking and flavoring to which the natural cherries were subjected, aside from other treatment, "rendered the article produced * * * a new and different thing" than the original cherry.

I am inclined to think that this determination of fact that a new article had been produced was justified by the circumstances showing the creation in the natural article of much different and more far-reaching changes than those created in the case of appellant's commodity. But whether this determination on the facts was correct or not, the decision fully realizes the existence of the principle that in order to manufacture it becomes necessary to make "a new and different thing, a thing distinctive in character from the original and natural product."

In *People ex rel. Standard Wood Co.* v. *Roberts* (20 App. Div. 514) it was held that a corporation engaged in making and selling kindling wood which was produced by sawing slabs of wood into strips which were then kiln dried and compressed by machinery into bundles of a specific size and shape for a particular purpose was engaged in manufacturing. That case perhaps approaches more closely than any other the character of an authority for appellant's contention. It undoubtedly is very near the border line. But even so a distinction can be drawn between the process essentially of purification which

208   People ex rel. E. S. Dairy Co. *v.* Sohmer.

[218 N. Y.]          Opinion, per Hiscock, J.          [May,

appellant employed and the one involved in the case cited whereby the form of an article was changed and it was prepared for an entirely new use.

In opposition to appellant's claim reference may be made to a few authorities of controlling character or great weight which, under varying conditions, define the changes and results which must be produced in an article by any process which is to be regarded as one of manufacturing.

In *People* v. *Knickerbocker Ice Co.* (99 N. Y. 181, 183) it was held that the collection, storage and preservation of natural ice did not constitute manufacturing. It may be conceded that these operations were more simple than those performed by the relator, but what was said in making the decision is pertinent in this case. It was written, "Its (relator's) dealing is with 'ice,' as an existing article, not the manufacture or production of ice by combination of materials, or the application of forces, or otherwise. It collects, stores and preserves that which natural causes created and which other natural causes would destroy and waste. * * * Many cases are cited by the learned counsel for the appellant, but we find none so comprehensive as to include this case. They all, so far as they have any application, require the production of some article, thing, or object by skill or labor out of raw material, or from matter which has already been subjected to artificial forces, or to which something has been added to change its natural condition."

In *Tide Water Oil Co.* v. *U. S.* (171 U. S. 210), where the question was being considered whether certain articles could be considered under the tariff laws as having been wholly manufactured in the United States, it was written (p. 216): "The primary meaning of the word 'manufacture' is something made by hand, as distinguished from a natural growth; but as machinery has largely supplanted this primitive method, the word is now ordinarily used to denote an article upon the material of

which labor has been expended to make the finished pro-
duct. Ordinarily, the article so manufactured takes a
different form, or at least subserves a different purpose
from the original material; and usually it is given a dif-
ferent name."

In *Frazee* v. *Moffitt* (20 Blatch. [U. S.] 267) it was
held that hay was not a manufactured article under the
tariff laws.

In *Hartranft* v. *Wiegmann* (121 U. S. 609, 615) it was
held that shells cleaned by acid and then ground and
polished on an emery wheel, some of them, farther, being
etched with acid and all intended to be sold for orna-
ments, were not manufactured but were exempt from
duty on import as shells "not manufactured." In reach-
ing this conclusion it was written: "We are of the opinion
that the shells in question here were not manufactured.
* * * They were still shells. They had not been
manufactured into a new and different article, having a
distinctive name, character or use from that of a shell.
The application of labor to an article, either by hand or
by mechanism, does not make the article necessarily a
manufactured article, within the meaning of that term
as used in the tariff laws."

In *Anhauser-Busch Association* v. *U. S.* (207 U. S.
556, 562) the court dealt with a claim for a drawback on
account of duties which had been paid on imported corks
which it was claimed were so imported for manufactur-
ing purposes within the United States. The object of
the statute as of the one before us was evidently to
encourage manufacturing within the United States. In
support of the claim it appeared that the corks in ques-
tion were imported from Spain; that after being brought
into this country they were assorted and branded and
then put into an air fan for the purpose of removing
foreign substances; that they were then thoroughly
cleansed by washing and steaming for the purpose of
removing tannin and germs and making the cork soft

14

and elastic; they were exposed in a machine to blasts of air for drying purposes and afterwards put in a bath of glycerine and alcohol for the purpose of closing up all seams, holes and crevices and for preventing them from giving a cork taste to beer inclosed in bottles in which they were used; subsequently they were subjected to another steam bath for the purpose of making them fit properly in the bottles in which they were used. The steaming of the corks, or pasteurizing them as it was termed, destroyed all the germs in them that would damage or spoil the beer. It was held that this process did not constitute manufacturing, it being said: "Manufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor and manipulation. But something more is necessary. * * * There must be transformation; a new and different article must emerge, 'having a distinctive name, character or use.' This cannot be said of the corks in question. A cork put through the claimant's process is still a cork. The process is the preparation of the encasement of the beer."

We think the effect of these authorities and many more which might be cited is to establish that the pasteurization of milk by relator was not the business of manufacturing within the statute.

Reference was made at the commencement of this opinion to another and minor objection to the tax which has been assessed against the relator. This objection is embraced in the assertion that to a limited extent it has been subjected to double taxation.

Prior to July 1, 1910, the relator had issued stock of the par value of only $215,900 out of an authorized issue of $750,000. On said date it declared a stock dividend of 100 per cent, which increased its issued capital stock to $431,800 par value. This capital stock was the basis on which was to be assessed in advance the tax against relator now before us for the year ending October 31, 1911.

As applicable to this case, section 182 of the Tax Law provided in substance that where a dividend in excess of 6 per cent had been declared upon capital stock the rate of taxation should be one-fourth of a mill for each one per cent of dividends "made or declared upon the par value of the capital stock employed during such year." Said section further provided that if dividends amounting to less than six per cent were declared on the par value of the capital stock or if no dividend were declared, the tax should be at the rate of three-quarters of a mill upon the amount of capital employed in the state.

The comptroller, in making the assessment of relator, was, therefore, confronted with the facts that upon the capital stock employed by the relator up to July 1, 1910, a dividend of 100 per cent had been declared, for it is conceded that a stock dividend stands upon the same basis as a dividend in cash, and upon $215,900 par value of stock issued as such dividend no dividend had been declared during the remainder of the year. From these facts we think it followed that the relator was assessable upon $215,900 par value of stock at the rate of one-quarter of a mill for each one per cent of dividend and upon $215,900 of stock issued as such dividend it was taxable at the rate of three-quarters of one mill upon the amount of said stock. This was the assessment which was in fact made by the comptroller and we see no legal objection to it.

The order appealed from should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., COLLIN, CUDDEBACK, HOGAN, SEABURY and POUND, JJ., concur.

Order affirmed.