CAPARRA DAIRY, INC., Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Intervener.

No. 123.   Argued May 7, 1947.—Decided May 19, 1947.

*Córdova & González* and *Carlos J. Faure* for petitioner. *Luis Negrón Fernández, Acting Attorney General,* and *Emilio R. Gautier* for intervener, respondent in the main proceeding.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the Court.

Caparra Dairy, Inc., is a domestic corporation engaged in the business of pasteurizing and selling milk. In 1945, after having imported into the Island of Puerto Rico the necessary machinery and apparatus for erecting a refrigerating unit to be used in the operation and functioning of its pasteurizing plant, the said corporation requested from the Treasurer of Puerto Rico that said machinery and apparatus be declared exempt from the payment of excises pursuant to § 16(*b*) of the Internal Revenue Act, which provides as follows:

"There shall be exempt from the payment of the excises imposed by this Act all machinery, apparatus, or equipment that may be essential *for the establishment and operation of industrial plants; Provided,* That the Treasurer of Puerto Rico shall prescribe the regulations that may be necessary in order to enforce the provisions of this Section." (Italics ours.)

Upon that request for exemption being refused, the petitioner paid the excises under protest and appealed to the Tax Court praying for the refund thereof. The present proceeding for review is directed against the decision of that tribunal denying the appeal.

The only question for us to decide is whether petitioner's plant for the pasteurization of milk is and should be considered as one of the "industrial plants" which the lawmaker had in mind when granting the tax exemption provided by § 16(*b*), *supra.*

The contention of the Treasurer of Puerto Rico, supported by the respondent tribunal, is that the only industries which are entitled to the exemption are those engaged in manufacturing, that is, in converting raw materials into other finished and different products. The petitioner admits that the pasteurization of milk is not a manufacturing process; but it insists that the exemption is broader than is claimed by the Treasurer and includes any plant which is engaged in any industry whatsoever.

In support of his contention, the Treasurer cites Article 4, § (*a*) (1) of the "Industrial Exemption Regulations" promulgated by him, which went into effect on August 22, 1944 and provides as follows:

"(*a*) *Industrial plants:*
By industrial plants shall be understood:
(1) Those establishments duly organized in which, by virtue of a predetermined systematic process, through the application of labor either directly or indirectly, raw materials are transformed into finished products distinct from said raw materials, for commercial distribution purposes."

Applying to the facts of the case the interpretation which he gives to the words *"plantas industriales"* in the Regulations, the Treasurer concludes that the process for pasteurizing milk is not a manufacturing process and that the pasteurizing plant is not an industrial plant entitled to the exemption claimed, because labor (*mano de obra*) is not an element of pasteurization and, furthermore, because pasteurized milk is not a product distinct from the milk that comes fresh from the cow.

The question thus raised will be considered and decided by us in the light of our local conditions and the adjudicated cases on the subject.

██ Since Puerto Rico is a small and overpopulated country, which is principally engaged in agriculture and lacks arable lands sufficient to produce the food necessary for a population of over 500 inhabitants per square mile, it is manifest that the serious problem presented by that overpopulation can only be solved in two ways: either through the emigration of our excess of population to other countries where it may find work and favorable living conditions, or through the establishment of new and varied industries in the Island. We think it is reasonable to assume that the insular lawmaker, being familiar with the local conditions above referred to and wishing to find an effective remedy therefor, when providing that "there shall be exempt from payment of excises . . . all machinery, apparatus, or equipment that may be essential for the establishment and operation of *industrial plants*," entertained the intention and purpose of facilitating and encouraging the establishment in the Island of the largest possible number of industries in which a considerable portion of our excess population could find well remunerated employment. It does not seem reasonable to assume that the "industrial plants" which the Legislature had in mind when granting the exemption were only those devoted to the manufacture of some particular product, that

is, the conversion or transformation of raw materials into finished products through the application, either direct or indirect, of labor. If such had been the legislative intent, it would have been easy to provide that the machinery and equipment exempt from the payment of excises shall be those that may be essential "for the establishment and operation of plants devoted to the manufacturing of products."

There is a marked conflict in the decisions on the question of whether the process for pasteurizing milk constitutes "manufacturing." Some authorities have decided the question in the negative,[1] while others hold that pasteurization is a manufacturing process which results in a product distinct from the raw material subjected to that process.[2] The case at bar does not involve the question of whether or not the pasteurization of milk is a manufacturing process. What we are called upon to decide is whether petitioner's plant for the pasteurization of milk is an "industrial plant," which is a condition fixed by the statute as a basis for claiming the exemption; and not whether it is a plant devoted to the "manufacture" of finished and distinct products, which is a condition imposed by the Treasurer of Puerto Rico in his Regulations. In case of conflict between the Regulations and the statute, the latter must prevail.

What is the meaning of the words "industrial plant" used in the statute under discussion?

In *Otis Elevator Co.* v. *Arey–Hauser Co.*, 22 Fed. Supp. 6, the word "plant" was interpreted thus:

"Within comparatively recent years our language has been enriched by a new use of the old word 'Plant.' It is an organized physical equipment to produce any desired result, or, as it has been phrased, it is an 'operating unit.' "

---

[1] *Louisville* v. *Ewing Von-Allmen Dairy Co.* (1937) 268 Ky. 652, 105 S.W. (2) 801; *People ex rel. Empire State Dairy Co.* v. *Sohmer*, 218 N.Y. 199, 112 N.E. 755; annotations in 10 A.L.R. 1298 and 116 A.L.R. 1122.

[2] *H.P. Hood & Sons* v. *Commonwealth*, 127 N.E. 497–499; cf. *In Re I. Rheinstrom & Sons Co.*, 207 Fed. 150–151.

See also *In Re American Pile Fabrics Co.*, 12 Fed. Supp. 87.

Applying the foregoing definitions to the facts of the present case, we must hold that the machinery, apparatus, and equipment devoted by the petitioner to the business of pasteurizing and selling milk, and used as an operating unit, constitute and should be considered as a "plant."

██ Is the process for pasteurizing milk an industry, so that a plant devoted to that process can and should be considered as an "industrial plant" and as such entitled to the exemption claimed?

In *Diccionario Enciclopédico Hispano–Americano de Literatura, Ciencias y Artes,* Montaner & Simón, Editors, Barcelona, vol. 11, p. 864, the difference in meaning between the words "industry" and "labor" is established thus:

"In order to avoid confusion and error the word *industry* is also given a meaning which is not admitted by economic science. In fact, this word is very frequently used as a synonym of *labor,* when, in reality, these two words have clearly distinct meanings. By labor is understood the pure and simple exercise of the physical forces or the intellectual faculties of man. Hence, when the exercise of these forces or faculties is sufficient to produce wealth, it may be said indiscriminately that the man labors or that he conducts an industry.

"But this rarely occurs. Generally, in order to produce, not only is labor necessary, but also the combination with it of capital and all natural agencies. *Production is, therefore, the result of a unity of combinations of which labor is only one of the elements. This ensemble is what is termed industry."* (Italics ours.)

The *Diccionario Salvat,* vol. V, p. 770, defines the word "industry", as follows:

"Industry is the result of operations whereby man changes and makes fit for his use materials which were unserviceable in their natural state, in which sense industry is the opposite of agriculture and commerce. . . ."

In *People* v. *Beauchamps,* 25 P.R.R. 559, Beauchamps was prosecuted for using an illegal measure for measuring coffee

berries gathered from the trees and carried to the plantation establishments by the pickers. The defendant demurred to the complaint on the ground that the charge did not constitute an offense because the Weight and Measures Act refers to "industrial and commercial transactions" and not to "agricultural services or work," such as the measuring of coffee berries. The court, speaking through Mr. Justice Aldrey, said:

" . . . There must be something more than the mere exercise of the physical force necessary to gather fruit from a tree, as berries from a coffee tree, to justify the conclusion that an industry is being conducted; therefore we cannot hold that the mere gathering of growing fruits is an industry, although it may be that when combined with subsequent intellectual acts for the purpose of changing or improving the product so gathered the combination may constitute an industry, in which sense, for example, the planting, gathering and preparing of coffee for the market may be termed a coffee industry; yet the mere gathering of the berries, we repeat, is not an industry but an agricultural pursuit."

In *Commissioners of Carroll County et al.* v. *B. F. Shriver Co.*, 126 Atl. 72 (Md.), there was involved the construction of a statute of the State of Maryland which exempted from the payment of excises machinery and equipment employed in manufacturing industries. The company claiming the exemption was engaged in the canning of corn, beans, and peas, and employed for this purpose machinery and apparatus of various kinds. The court granted the exemption, saying:

"The object and purpose of the statute, as shown by its titling, was to encourage the development of manufacturing industries in the state of Maryland by exempting the tools, machinery, etc., of those actually engaged in manufacturing from the payment of the aforesaid taxes, and the benefit which was expected to be derived therefrom was the bringing in of labor in large numbers and its employment in the community, accompanied by all the beneficial results that usually and naturally follow such employment, as well as all other benefits that result from the establishment of such indus-

tries. Therefore we cannot escape the conclusion, upon the reasoning of *Carlin* v. *West Insurance Co., supra,* that it was foreign to the intention of the Legislature that the industry here involved should not be regarded as a manufacturing industry within the meaning of that law, . . ."

In *U. S.* v. *Public Service Co. of Colorado,* 143 Fed. Rep. (2) 79, tax exemption was claimed on the sale of electrical energy to twenty plants for the pasteurization of milk, relying on a statute which exempted from the payment of taxes the sale of electrical energy for industrial consumption. It was held that the exemption was proper, the court saying:

". . . All industry in a sense is commercial, but admittedly industrial consumption is not included. A manufacturer intends ultimately to sell his goods—his income is derived from the sale of his product. True, the twenty dairies were buying and selling milk, but they were doing more—they were processing—pasteurizing raw milk in preparation for the market. Although the product sold was milk, it was not raw milk. The electrical energy was not used in the commercial phase of the dairying enterprise, but in the processing or industrial phase of the enterprise."

The cases cited by the Treasurer [3] are inapposite, as they involve the construction of statutes whose wording is different from that of § 16(*b*) of our Internal Revenue Act. For instance, in *City of Louisville* v. *Ewing Von-Allmen Dairy Co., supra,* it was held that the claimant owners of pasteurization plants were not entitled to exemption under the statute which exempted from the payment of taxes "machinery and products in course of manufacture, of persons, firms, or corporations, actually engaged in manufacturing," for the reason that a corporation engaged in the pasteurization of raw milk is not engaged in manufacturing. All those cases would be applicable if the language of the statute involved herein were similar to that of the Regulations issued

---

[3] *City of Louisville et al.* v. *Ewing Von-Allmen Dairy Co.* 105 S.W. (2) 801–802; *The People of New York, ex rel. Empire State Dairy Co.* v. *Sohmer,* 112 N. E. 755–756; *Anheuser Busch Brewing Association* v. *U. S.,* 207 U.S. 556–562; *City of Richmond* v. *Richmond Dairy Co.,* 157 S. E. 728.

by the Treasurer. The statute does not require as a condition precedent to the right of exemption that the "industrial plant" should be devoted to manufacturing. And the statute, we repeat, must prevail.

We are of the opinion that since petitioner's pasteurization plant is an "industrial plant," the machinery, apparatus, and equipment, which are essential for the establishment and operation thereof are exempt from the payment of the excises, pursuant to the provisions of § 16(b) of the Internal Revenue Act, *supra*, and that the provisions of the Regulations issued by the Treasurer, *supra*, in so far as they limit the right of exemption to the establishments of plants which are devoted to the manufacturing of products are without force or validity, as the Treasurer lacks power to limit or restrict a right granted by the Legislature, and are therefore void.

For the reasons stated the decision sought to be reviewed should be set aside and the case remanded to the lower court with instructions to render another decision ordering the return to the petitioner of the amount paid under protest, plus interest accrued to the date on which such return shall be made, at the rate fixed by law.

Mr. Justice Marrero did not participate herein.