Caparra Dairy, Inc., peticionaria, *v.* Tribunal de Contribuciones, demandado; Rafael Buscaglia, Tesorero de Puerto Rico, interventor.

Núm. 123.—*Sometido:* Mayo 7, 1947. *Resuelto:* Mayo 19, 1947.

*Córdova & González* y *Carlos J. Faure,* abogados de la peticionaria;
*Hon. Procurador General Interino Luis Negrón Fernández,* y
*Emilio E. Gautier,* abogados del interventor, querellado en el
pleito principal.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del
tribunal.

Caparra Dairy, Inc. es una corporación doméstica que se
dedica al negocio de pasterización y venta de leche al pú-
blico. En el año 1945, habiendo importado a la isla de Puerto
Rico las maquinarias y aparatos necesarios para constituir
una unidad de refrigeración destinada a la operación y fun-
cionamiento de su planta de pasterización, la referida cor-
poración solicitó del Tesorero de Puerto Rico que declarase
dichas maquinarias y aparatos exentos del pago de arbitrios,
de conformidad con la sección 16(*b*) de la Ley de Rentas In-
ternas, que dispone lo siguiente:

"Estarán exentos del pago de los arbitrios impuestos por esta
Ley toda maquinaria, aparato o equipo que sea esencial *para el esta-
blecimiento y funcionamiento de plantas industriales.* Disponiéndose,
que el Tesorero de Puerto Rico dictará los reglamentos que fueren
necesarios para dar cumplimiento a las disposiciones de esta sección."
(Bastardillas nuestras.)

Declarada sin lugar la exención solicitada, la peticionaria
pagó los arbitrios bajo protesta y acudió ante el Tribunal de

Contribuciones solicitando su devolución. El presente recurso va dirigido contra la resolución de dicho Tribunal declarando sin lugar la querella.

La única cuestión que tenemos que resolver es si la planta de pasterización de leche de la peticionaria es y debe ser considerada como una de las "plantas industriales" que el legislador tuvo en mente al conceder la exención de arbitrios autorizada por la sección 16(b), supra.

La contención del Tesorero de Puerto Rico, sostenida por el Tribunal recurrido, es que las únicas industrias que tienen derecho a la exención son aquellas que se dedican a la manufactura, o sea, a convertir materias primas en otros productos terminados y diferentes. La peticionaria admite que la pasterización de leche no es un proceso de manufactura, pero insiste en que la exención es más amplia que lo que pretende el Tesorero e incluye cualquier planta que se dedique a una industria cualquiera.

En apoyo de su contención, el Tesorero cita el artículo 4, sección (a) (1) del "Reglamento de Exención Industrial," por él promulgado, que entró a regir el 22 de agosto de 1944 y dispone:

"(a) *Plantas industriales:*

Se entenderá por plantas industriales:

(1) Aquellos establecimientos debidamente organizados en los que a virtud de un proceso sistemático predeterminado, mediante la aplicación de mano de obra en forma directa o indirecta se transformen materias primas en productos terminados distintos a dichas materias primas con fines de distribución comercial."

Aplicando a los hechos del caso la interpretación que en su reglamento ha dado él a las palabras "plantas industriales", concluye el Tesorero sosteniendo que el proceso de pasterización de leche no es un proceso de manufactura y que la planta de pasterización no es una planta industrial con derecho a la exención que se reclama, porque en la pasteriza-

ción no interviene la mano de obra y, además, porque la leche pasterizada no es un producto distinto a la leche ordeñada de la vaca.

Planteada así la cuestión, procederemos a considerarla y resolverla a la luz de nuestras condiciones locales y de la jurisprudencia sobre la materia.

Siendo como es Puerto Rico un país pequeño y superpoblado, dedicado principalmente a la agricultura y sin tierras laborables suficientes para producir los alimentos necesarios para una población de más de 500 habitantes por milla cuadrada, es obvio que el serio problema que presenta la superpoblación insular solamente puede ser resuelto de dos maneras: mediante la emigración de nuestro exceso de población a otros países donde pueda encontrar trabajo y condiciones de vida favorables o mediante el establecimiento de nuevas y variadas industrias en la Isla. Creemos que es razonable presumir que el legislador insular, familiarizado con las condiciones locales que hemos descrito y deseoso de encontrar remedio eficaz para las mismas, al disponer que ''estarán exentos del pago de los arbitrios . . . toda maquinaria, aparato o equipo que sea esencial para el establecimiento y funcionamiento de *plantas industriales*,'' tuvo la intención y el propósito de facultar y estimular el establecimiento en la Isla del mayor número posible de industrias en las cuales pueda encontrar empleo bien remunerado una gran parte de nuestro excedente poblacional. No nos parece razonable presumir que las ''plantas industriales'' que la Legislatura tuvo en mente al otorgar la exención fueran solamente aquéllas que se dedican a la manufactura de algún producto determinado, o sea, a la conversión o transformación de materias primas en productos terminados, mediante la aplicación, en forma directa o indirecta, de la mano de obra. Si ésta hubiese sido la intención legislativa, fácil hubiera sido disponer que las maquinarias y equipos exentos del pago de arbitrios

serán aquéllos que fueren esenciales "para el establecimiento y funcionamiento de plantas dedicadas a la manufactura de productos."

Existe un marcado conflicto de jurisprudencia en cuanto a si el proceso de pasterización de la leche constituye "manufactura". Algunas autoridades han resuelto la cuestión en la negativa,[1] mientras que otras han resuelto que la pasterización es un proceso de manufactura que da por resultado un producto distinto a la materia prima sometida a dicho proceso.[2] En el caso de autos no está envuelta la cuestión sobre si la pasterización de la leche es o no un proceso de manufactura. Lo que nos toca resolver es si la planta de pasterización de leche de la peticionaria es una "planta industrial", que es la condición que fija el estatuto para poder reclamar la exención; y no si es una planta dedicada a la "manufactura" de productos terminados y distintos, que es la condición impuesta por el Tesorero de Puerto Rico en su reglamento. En caso de conflicto entre el reglamento y la ley, es ésta la que debe prevalecer.

¿Qué es lo que significan las palabras "planta industrial", usadas en el estatuto que estamos considerando?

En *Otis Elevator Co.* v. *Arey-Hauser Co.*, 22 F. Supp. 4, 6, la palabra "planta" fué interpretada así:

"Dentro de un número de años comparativamente recientes, nuestro lenguaje ha sido enriquecido por un nuevo uso de la antigua palabra 'planta'. Es un equipo físico organizado para producir cualquier resultado que pueda desearse o, según se ha expresado por medio de una frase, es una unidad de operación (*operating unit*)."

Véase, además, *In re American Pile Fabrics Co.*, 12 F. Supp. 86, 87.

---

[1] *City of Louisville* v. *Ewing Von-Allmen Dairy Co.* (1937) 268 Ky. 652, 105 S.W.2d 801; *People ex rel. Empire State Dairy Co.* v. *Sohmer*, 218 N.Y. 199, 112 N.E. 755; anotaciones en 10 A.L.R. 1298 y 116 A.L.R. 1122.

[2] *H. P. Hood & Sons* v. *Commonwealth*, 127 N.E. 497–499; *cf. In Re I. Rheinstrom & Sons Co.*, 207 Fed. 119, 150–151.

Aplicando las anteriores definiciones a los hechos del presente caso, debemos resolver que las maquinarias, aparatos y equipos dedicados por la peticionaria al negocio de pasterización y venta de leche y utilizados como una unidad de operación, constituyen y deben ser considerados como una "planta".

■■ ¿Es el proceso de pasterización de leche una industria, de manera que la planta dedicada a ese proceso pueda y deba ser considerada como una "planta industrial" y como tal con. derecho a la exención que se reclama?

En el Diccionario Enciclopédico Hispano-Americano de Literatura, Ciencias y Artes, Montaner & Simón, Editores, Barcelona, tomo 11, página 864, se establece la diferencia que existe entre los vocablos "industria" y "trabajo", en el párrafo siguiente:

"Se da también a la voz *industria* una acepción que no admite la ciencia económica para evitar una confusión y un error. En efecto, con gran frecuencia se emplea esta palabra como sinónima de 'trabajo', cuando en realidad tienen estos dos términos significaciones claramente distintas. Se entiende por trabajo el ejercicio puro y simple de las fuerzas físicas o de las facultades intelectuales del hombre; así, pues, cuando basta el empleo de estas fuerzas o facultades para producir riqueza, puede indistintamente decirse que el hombre trabaja o que ejerce una industria.

"Mas esto pocas veces ocurre; casi siempre, para producir, es necesario, no sólo el trabajo, sino el concurso del capital y de los agentes naturales. *La producción es, pues, la resultante de un conjunto de combinaciones, de las cuales el trabajo no es sino uno de los elementos. A este conjunto de combinaciones es al que se llama industria.*" (Bastardillas nuestras.)

El Diccionario Salvat, Tomo V, página 770, define la palabra "industria" así:

"Industria es el conjunto de las operaciones mediante las cuales el hombre modifica y apropia para su uso las materias de que no podría servirse en su estado natural, en cuyo sentido se opone la industria a la agricultura y al comercio. . . . . ."

En *Pueblo* v. *Beauchamps,* 25 D.P.R. 602, 605, se procesó a Beauchamps por haber usado una medida ilegal para medir a los cogedores el café en uva cogido por éstos de los árboles y traído a los establecimientos de la finca. El acusado excepcionó la denuncia, basándose en que no se le imputaba la comisión de delito alguno, porque la ley de pesas y medidas se refiere a "transacciones industriales y comerciales" y no a "servicios o trabajos agrícolas" como el medir café en uva. La Corte, por voz de su Juez Asociado Sr. Aldrey, se expresó así:

"Para que pueda decirse que se ejerce una industria es necesario que exista algo más que el simple ejercicio de la fuerza física que representa el coger el fruto pendiente de un árbol, como el café en uva de los cafetos, por lo que no podemos declarar que la mera recolección de los frutos pendientes sea una industria aunque puede ser que ese acto reunido a otros posteriores de inteligencia para modificar o mejorar el producto recogido pueda constituir en conjunto una industria, en cuyo sentido puede llamarse industria cafetera, por ejemplo, a la siembra, recolección y preparación para el comercio del café, pero la recolección del fruto solamente, repetimos, no es una industria sino un trabajo agrícola."

En *Commissioners of Carroll County et al.* v. *B. F. Shriver Co.,* 126 Atl. 71, 72 (Md.) se trataba de la interpretación de un estatuto del estado de Maryland que eximía del pago de arbitrios a las maquinarias y equipo empleados en las industrias dedicadas a la manufactura de productos. La compañía reclamante de la exención se dedicaba a enlatar maíz, habichuelas y guisantes, empleando para ello maquinarias y aparatos de diversas clases. La corte concedió la exención expresándose así:

"El objeto y el propósito del estatuto, según lo demuestra su título, era estimular el desarrollo de industrias manufactureras en el estado de Maryland, eximiendo los instrumentos, maquinaria, etc., de aquéllas que actualmente se dedican a la manufactura, del pago de dichas contribuciones, y el beneficio que de ello debía esperarse era el de traer un gran número de trabajadores y el empleo de los mismos

en la comunidad, acompañado por todos los beneficios que usual y naturalmente resultan de tal empleo, así como todos los demás beneficios que resultan del establecimiento de tales industrias. Por lo tanto, no podemos evitar la conclusión, siguiendo el razonamiento de *Carlin* v. *West Insurance Company*, supra, que era ajeno a la intención de la Legislatura, el que la industria aquí envuelta no deba ser considerada como una industria manufacturera dentro del significado de esa ley, . . . . ''

En *United States* v. *Public Service Co. of Colorado*, 143 F.2d 79, 82, se reclamó la exención de contribuciones sobre la venta de energía eléctrica a veinte plantas pasterizadoras de leche, invocando una ley que eximía del pago de contribuciones a la venta de energía eléctrica para consumo industrial. Se resolvió que procedía la exención, expresándose así el tribunal:

''Toda industria es en un sentido comercial, pero se admite que el consumo industrial no está incluído. Un manufacturero se propone en definitiva vender sus productos—sus rentas se derivan de la venta de esos productos. Es cierto, las veinte lecherías estaban comprando y vendiendo leche, pero estaban haciendo más—estaban dedicadas a un proceso (*processing*)—pasterizando leche cruda en preparación para el mercado. Aunque el producto vendido era leche, no era leche cruda. La energía eléctrica no era usada en la fase comercial de la empresa lechera, sino en el 'processing' o fase industrial de la empresa.''

Los casos citados por el Tesorero([3]) no son de aplicación, pues en ellos se trata de la interpretación de estatutos redactados en términos distintos a los de la sección 16(*b*) de nuestra Ley de Rentas Internas. Por ejemplo, en *City of Louisville* v. *Ewing Von-Allmen Dairy Co.* se resolvió que las plantas de pasterización reclamantes no tenían derecho a exención bajo un estatuto que eximía del pago de contribuciones ''las maquinarias y productos en proceso de manu-

---

([3]) *City of Louisville et al.* v. *Ewing Von-Allmen Dairy Co.*, 105 S.W.2d 801–802; *People ex rel. Empire State Dairy Co.* v. *Sohmer*, 112 N. E. 755–756; *Anheuser-Busch Brewing Association* v. *United States*, 207 U.S. 556–562; *City of Richmond* v. *Richmond Dairy Co.*, 157 S.E. 728.

factura, de personas, firmas, o corporaciones actualmente dedicadas a la manufactura," por la razón de que una corporación dedicada a la pasterización de leche cruda no está dedicada a la manufactura. Todos dichos casos serían aplicables si el estatuto que estamos considerando estuviese redactado en la forma en que lo está el reglamento promulgado por el Tesorero. La ley no requiere como condición para tener derecho a la exención que la "planta industrial" esté dedicada a la manufactura. Y es la ley, repetimos, la que debe prevalecer.

Opinamos que siendo la planta de pasterización de la peticionaria una "planta industrial", las maquinarias, aparatos y equipos esenciales para su establecimiento y funcionamiento están exentos del pago de los arbitrios, de acuerdo con lo dispuesto por la sección 16(b) de la Ley de Rentas Internas, supra; y que la disposición del reglamento promulgado por el Tesorero, supra, en cuanto limita el derecho de exención a los establecimientos o plantas dedicados a la manufactura de productos, carece de fuerza y validez por carecer el Tesorero de autoridad para limitar y restringir un derecho concedido por la Legislatura, siendo por tanto nula.

*Por las razones expuestas debe anularse la resolución recurrida y devolverse el caso al tribunal inferior con instrucciones de que proceda a dictar otra ordenando la devolución a la peticionaria de la suma pagada bajo protesta, más los intereses devengados hasta la fecha en que se efectúe la devolución, al tipo fijado por la ley.*