TEÓDULO LLAMAS, peticionario, *v.* TRIBUNAL DE DISTRITO DE PUERTO RICO, SECCIÓN DE SAN JUAN, HON. EMILIO S. BELAVAL, JUEZ, demandado; FERNANDO SIERRA BERDECÍA, SECRETARIO DEL TRABAJO, interventor.

Número 1961.

*Sometido:* 1 de octubre de 1952. *Resuelto:* 24 de octubre de 1952.

*Víctor Rivera Colón,* abogado del peticionario; *Joaquín Gallart Mendía* y *Guillermo Estrella Frasqueri,* abogados del interventor, querellante en el pleito principal.

EL JUEZ ASOCIADO PÉREZ PIMENTEL emitió la opinión del tribunal.

En este caso expedimos un auto de *certiorari* para revisar una sentencia del anterior Tribunal de Distrito de Puerto Rico, Sección de San Juan, condenando al peticionario a pagar a tres empleados suyos ciertas sumas de dinero en concepto de horas extras trabajadas durante los días y horas en que el establecimiento donde prestaron servicios dichos empleados, debió permanecer cerrado al público por disposición legal.

La indicada sentencia fué dictada por el tribunal inferior al conocer, en grado de apelación, de una querella radicada originalmente en el Tribunal Municipal de Puerto Rico, Sala de San Juan, por el Comisionado del Trabajo, en representación y para beneficio de los obreros Guillermo Rosario Sánchez, Manuel Badillo González y Guillermo Ortiz Mangual. En dicha querella se alegó en síntesis, que los referidos obreros trabajaron para el querellado Teódulo Llamas, en una fábrica de hielo en San Juan, Puerto Rico, en las capacidades, por los períodos y por los salarios semanales siguientes: Guillermo Rosario Sánchez, cubero, de mayo 24, 1947 a enero 31, 1951, por $18; Manuel Badillo González, carpintero, de 1945 a febrero 1ro. de 1951, por $25; y Guillermo Ortiz Mangual, mecánico, de junio de 1947 a enero 31, 1951, por $24; que en el curso de estos empleos los mencionados obreros trabajaron durante horas en que el referido establecimiento del querellado debió permanecer cerrado al público por disposición legal, detallándose dichas horas en tres *exhibits* que se acompañaron e hicieron formar parte de la querella y las cuales están comprendidas entre mayo 30 de

1948 a enero 11 de 1951; que el patrón querellado pagó a los obreros reclamantes estas horas extras a tiempo sencillo cuando debió pagárselas a tipo doble, adeudándoles, por consiguiente, la diferencia. Se reclamó además en la querella la correspondiente suma por concepto de liquidación de daños y perjuicios.

El querellado negó todos los hechos de la querella y planteó varias defensas especiales, entre ellas, la de "Que el negocio del demandado en el cual se alega trabajan los querellantes es uno de los exentos por las disposiciones de la Ley núm. 379 de 1948, artículo 4 letra B."

Al declarar con lugar la querella el tribunal a quo resolvió que el establecimiento donde trabajan los obreros querellantes no es un *depósito de hielo* y sí una *planta de hielo* y que por tanto, dicho establecimiento no está exento de las disposiciones de la ley—artículo 553 del Código Penal—que regula el cierre de establecimientos comerciales e industriales. La única cuestión envuelta en este recurso es, pues, si los obreros querellantes trabajaron en un establecimiento— "depósito de hielo"—exento por las disposiciones del citado artículo 553 del Código Penal (Ley de Cierre de Establecimientos Comerciales e Industriales) o en uno no exento— "planta para fabricar hielo".

██ La Ley núm. 379, aprobada en 15 de mayo de 1948 ((1) pág. 1255) (Ley para Establecer la Jornada de Trabajo en Puerto Rico) dispone en su artículo 4 lo siguiente:

"Artículo 4.—Son horas extras de trabajo:
"(a) .   .   .   .   .   .   .   .
"(b) .   .   .   .   .   .   .   .
"(c) .   .   .   .   .   .   .   .
"(d) las horas que un empleado trabaja para su patrono durante los días u horas en que el establecimiento en que presta servicio deba permanecer cerrado al público por disposición legal; *Disponiéndose, sin embargo,* que no serán horas extras las horas que el empleado trabaja para su patrono durante los días u horas en que el establecimiento deba permanecer cerrado al público cuando el patrono ha obtenido del Comisionado del Tra-

bajo el permiso requerido por la Ley núm. 80, de 5 de mayo de 1931, según ha sido o fuere subsiguientemente enmendada, y la totalidad de horas trabajadas por el empleado durante ese día no exceda de ocho horas ni la totalidad de horas trabajadas durante la semana exceda de cuarenta y ocho horas."[1]

Luego en su artículo 5 dispone la misma ley que todo patrono que emplee o permita que trabaje un empleado durante horas extras vendrá obligado a pagarle por cada hora extra un tipo de salario igual al doble del tipo convenido para horas regulares.

El cierre de los establecimientos comerciales e industriales está regulado por el artículo 553 del Código Penal.[2] Dispone dicho artículo que *los establecimientos comerciales e industriales* permanecerán cerrados al público, sin que pueda realizarse en los mismos ninguna clase de trabajo después de una hora de cerrados, durante los días y horas que se especifican en dicho artículo. Su apartado (*b*) lee como sigue:

"(*b*) No tendrán que cerrar sus puertas al público durante dichos días y horas los siguientes establecimientos:

"1. .        .        .        .        .        .        .        .
"2. .        .        .        .        .        .        .        .
"3. .        .        .        .        .        .        .        .
"4. Los casinos, salones de billar, *depósitos de hielo*, puestos de carne y leche." (Bastardillas nuestras.)

Debemos pues determinar si los obreros querellantes trabajaron, según alega el aquí peticionario, en un *depósito de hielo*, que es uno de los establecimientos incluídos en la subdivisión 4, copiada anteriormente, como exento de cerrar sus puertas al público durante los días y horas especificados por la ley.

El tribunal recurrido resolvió que el establecimiento donde trabajan los obreros querellantes es una *planta de*

---

[1] En este caso el patrono no ha obtenido el permiso a que se contrae esta disposición.

[2] Este artículo fué reenactado por la Ley núm. 250 de 9 de mayo de 1950 ((1) pág. 657), pero ello en nada afecta la cuestión envuelta en este recurso.

*hielo* y que en la misma no existe un *depósito de hielo* tal como éste se conoce para fines comerciales de reventa. El peticionario arguye que la subdivisión 4 antes citada de la Ley de Cierre no hace distinción alguna entre una u otra clase de depósitos de hielo y que por lo tanto el tribunal a quo no podía establecer clasificaciones para los mismos. En realidad lo que fundamentalmente resolvió dicho tribunal, a nuestro juicio correctamente, fué que los obreros querellantes trabajaron en una planta o fábrica de hielo y no en un depósito de hielo. Veamos. Del récord aparece que no hay controversia alguna en cuanto a que el peticionario es dueño de una fábrica de hielo sita en la parada dos y media de Puerta de Tierra y que los tres obreros querellantes trabajaron en dicha fábrica durante los días y horas especificados en la querella; que dicha fábrica tiene en un mismo local sus tanques de congelación y sus depósitos; una vez fabricado el hielo y como última etapa de ese proceso, se traslada, mediante el uso de una grúa eléctrica, a los depósitos o frigoríficos, donde se coloca para conservarlo sin que se derrita hasta que es trasladado a las guaguas (camiones) que lo distribuyen al comercio. Incidentalmente se vende hielo en la fábrica a alguna persona que vaya allí a comprarlo pero ninguno de los obreros querellantes se dedicaba a efectuar esas ventas. La labor de Guillermo Rosa Sánchez(3) consistía en sacar el hielo de los tanques de congelación con la grúa eléctrica para colocarlo en los depósitos de conservación; Manuel Padilla González trabajaba como carpintero en la reparación de las cajas de las guaguas usadas para distribuir el hielo al comercio y Guillermo Ortiz Mangual trabajaba como mecánico en la reparación de dichas guaguas.

Tanto los frigoríficos o depósitos como los camiones (guaguas), usados estos últimos en la distribución del hielo, forman parte integrante del negocio del peticionario conocido

---

(3) El administrador de la fábrica de hielo del peticionario declaró en la vista del caso que este obrero también se dedicaba a despachar el hielo a los *trucks* que lo distribuían.

con el nombre de planta o fábrica de hielo. Todo ese equipo usado para producir y distribuir hielo constituye una unidad de operación (*operating unit*). Como dijimos en el caso de *Caparra Dairy* v. *Tribl. de Contribuciones*, 67 D.P.R. 314, citando el de *Otis Elevator Co.* v. *Arey-Hauser Co.*, 22 F. Supp. 4, a la palabra "planta" se le dió el siguiente significado:

"Dentro de un número de años comparativamente recientes, nuestro lenguaje ha sido enriquecido por un nuevo uso de la antigua palabra 'planta'. Es un equipo físico organizado para producir cualquier resultado que pueda desearse o, según se ha expresado por medio de una frase, es una unidad de operación (*operating unit*)."

Del récord se desprende que los frigoríficos o depósitos donde se almacena el hielo para su conservación son un equipo necesario e indispensable en la operación de la planta del peticionario y que los camiones (guaguas) se usan para transportar el hielo desde la planta hasta el comercio. No podemos, pues, convenir con el peticionario en que los obreros querellantes trabajaron para él en uno de los establecimientos exentos de las disposiciones de la Ley de Cierre. Al mencionar dicha ley *los depósitos de hielo*, ciertamente no se refería a las plantas de hielo. Más bien lo que el estatuto contempla es un sitio o local donde generalmente se tiene el hielo para fines de venta, o sea, un establecimiento similar a los puestos de carne y de leche.

*Por las razones expuestas deberá anularse el auto expedido.*

El Juez Presidente Sr. Todd, Jr., no intervino.