### In re KENYON & FENTON.

[6 N. B. R. 238.]

Superior Court, Territory of Utah. 1873.

BANKRUPTCY — MANUFACTURERS — ACT OF BANKRUPTCY—PAYMENT OF WAGES.

1. The publishers of a daily paper and proprietors of a book and job printing office are manufacturers, within the meaning of the bankrupt act.

2. Payment of wages to employés, though made in the regular course of business, is an act of bankruptcy if done in contemplation of insolvency; for although the law prefers an employé to the amount of fifty dollars, this preference must be secured by and through the proceedings in bankruptcy, and not outside of them, or independent of and in spite of the act. The negotiable paper of a firm of manufacturers is commercial paper within the meaning of the act, regardless of the purpose for which it was given.

The question before the court arises upon two separate demurrers filed by said several alleged bankrupts to the said petition for adjudication of bankruptcy against them.

The said petitioner, among other things, alleges that said firm are publishers of a daily paper in Salt Lake City, in said territory, known as the "Salt Lake Daily Review," and have also conducted a book and job printing office connected therewith, in which are manufactured cards, notes, billheads, blank books, posters, show bills, and other articles, &c.; that said firm, within six months, to wit, on the twenty-sixth of December, eighteen hundred and seventy-one, in said territory, being manufacturers, have suspended and have not resumed payment of their commercial paper with-

---

[4] For such case, see In re John Clemens [Case No. 2,878].

in a period of fourteen days, which paper is therein set forth; and that being in contemplation of insolvency said Kenyon executed a mortgage or transferred all his right, title and interest in the business, material, effects and assets of the said Daily Review and the said job office to said Fenton, with the intent to delay the operation of said bankrupt act; and that being in contemplation of insolvency, and within six calendar months, to wit, on the seventeenth day of November, eighteen hundred and seventy-one, and at sundry other times since then, made payments of money to sundry persons therein named, with the intent to give a preference to their creditors; and that within six calendar months, to wit, on the second day of November, eighteen hundred and seventy-one, the said firm being manufacturers, suspended, and have not resumed payment of their commercial paper within a period of fourteen days, therein describing the same and showing it to be negotiable paper.

The said demurrers substantially charge that said petition is not sufficient in law, and in this: First. It does not aver that the alleged bankrupts are manufacturers within the meaning of the bankrupt act. Second. It does not aver that the notes mentioned in said petition were the commercial paper of said bankrupts nor that they were made in the course of their trade as manufacturers within the meaning of said act. Third. There is not a sufficient allegation that said mortgage, and the said payments made by said bankrupts, were made with the intent to prefer any of their creditors. Fourth. That there is no allegation that said mortgage and payments were made in the contemplation of bankruptcy, etc. Fifth. That there are not sufficient facts alleged to entitle the petitioner to the relief prayed for under the said act.

Charles G. Loeber, for Kenyon.
D. Cooper, for Fenton.
James L. High, petitioner, pro se.

McKEAN, C. J. The respondents must be regarded as manufacturers, and the promissory notes set forth in the petition as their commercial paper. The petition contains all necessary averments, and, therefore, the demurrers should be overruled.

HAWLEY, J. To understand the questions raised by said demurrers, it becomes necessary to enquire into the nature and extent of the character of a manufacturer and trader within the meaning of the bankrupt act. The character of a trader embraces a wide field of operation. It is of no consequence in what one may trade, the only question is, does he buy and sell articles which are subject to trade and commerce? In re Cowles [Case No. 3,297]. Selling horses or other stock or the products of a farmer does not constitute him a trader within the meaning of the act. But if a farmer buys horses or other stock or products of a farm to sell again, and this constitutes a part of his business, he then becomes a trader, and subjects himself to this provision of the bankrupt act. In re Chandler [Case No. 2,591]. The term "manufacturer," under the bankrupt act, has a legal meaning; and this legal meaning must be governed by legal rules. It is true, that every one who manufactures, is not to be embraced within the legal phrase. A farmer is not to be considered a manufacturer in the commercial sense, when he confines his business to the manufacture of the milk of his cows into butter and cheese; nor when he converts the products of his farm into beef and pork. But it does not follow, that when he makes it a part of his business to buy milk and manufacture the same into butter and cheese, or to purchase the products of other farms and other stock than those of his own, and manufactures the same into beef and pork, that he

is not a manufacturer within the meaning of the act. When the manufacturing becomes the principal part of even a farmer's business, which requires him to buy articles or products and to manufacture them for sale, he thereby becomes a manufacturer and trader within the meaning of the act. A buyer of leather, who makes it his business, or a part of his business to manufacture the same into boots and shoes, or harness, and sells the same, though he be a nursery-man or a gardener or a farmer, is a manufacturer and a trader within the meaning of the act. If other construction than this should be given to the act, the spirit and letter of the same could be destroyed by assumptions the most frivolous as well as those the most false. If it should be admitted that the publishers of a weekly or daily paper were not manufacturers within the meaning of the act, yet if they should buy paper, ink, and other material, and make the same into cards or billheads, or blanks and blank books, and conduct a business of this kind, as in this case it is averred the bankrupts have done, they are manufacturers and traders within the meaning of the act; for these articles so manufactured are not necessary parts of the business of publishing a newspaper. The petitioner avers that said alleged bankrupts are publishers of said newspaper, and manufacturers of books, cards, billheads, etc. Though it is not necessary to decide that the printing and publishing of a daily newspaper is manufacturing in the strict sense of the law, yet my brother judges have expressed the opinion it would be, and I am inclined to the same conviction. A newspaper publication is as much the result of manufacture as that of books or cards or billheads. To make a distinction between them, when in fact there is no distinction, would seem to be an utter disregard of the objects as well as the legal intendment of the law; for they buy, manufacture, and sell.

The second cause of demurrer, to wit, that there is no allegation that said notes set forth were the commercial paper of the said firm, certainly has no foundation; for the averment of the petitioner is explicit that said firm within six calendar months, to wit, on the second day of November, eighteen hundred and seventy-one, being manufacturers as aforesaid, suspended, and have not resumed payment of their commercial paper within a period of fourteen days. This allegation is in the language prescribed by the thirty-ninth section, and fully sets forth the making and suspension and non-resumption of their commercial paper for a period of fourteen days. What other or further averment is necessary is not comprehended, and we must therefore hold this averment sufficient.

The third cause of demurrer in part is that the averment that said Kenyon mortgaged his said interest in the property named to his co-partner, Fenton, who is made a party defendant in the proceedings in bankruptcy, with the intent to prefer his said partner, seems to be well taken; for a transfer of one partner to another, of a firm, is not such a transfer that puts the property out of the firm in the strict sense. The removal of the property by mortgage out of the hands of one and into the possession and ownership of the other partner does not remove the same in legal contemplation from liability to the firm's creditors. But the other clause of this specification, that said payments were made by said firm within six calendar months with intent to prefer creditors, is a sufficient charge under the act. Therefore, this cause of demurrer, being good only in part, and not obnoxious to the petition in another material point, it cannot be sustained. The fact that said payments were made to the employés of said firm, in their said business, while other employés, with the petitioner, were not paid, does not relieve against this act, or cause for proceedings in bankruptcy against them. They

·have no right to prefer one of their employés against the rights of other creditors, whether employés or otherwise. The law prefers an employé to the amount of fifty dollars, but this preference must be secured, if at all, by and through the proceedings in bankruptcy, and not outside of them, or independent of, and in spite of the act. Whenever a person or a firm find they are unable to pay his or their debts in full, or his or their commercial paper at maturity, it is his or their duty to apply to the court in due form of law under the bankrupt act, to distribute his or their assets among his or their creditors equally, without other preference than the said act provides.

But counsel insist that, because the petitioner has embraced certain elements of section thirty-five with those of section thirty-nine of the act, therefore his petition in these respects is obnoxious to the demurrer. The petitioner manifestly has a right so to do. These two sections must, as they uniformly have been, be construed by the courts together: for in effect section thirty-five so provides, as follows: "And if any person, being insolvent, or in contemplation of insolvency or bankruptcy, within six months before the filing of the petition by or against him, makes any payment, sale, assignment, transfer, conveyance, or other disposition of any part of his property to any person who then has reasonable cause to believe him to be insolvent, or acting in contemplation of insolvency, and that such payment, sale, assignment," etc., "is made to prevent the same from being distributed under this act, or to defeat the object of, or in any way impair, hinder, impede or delay the operation and effect of, or to evade any of the provisions of this act," etc., the same "shall be void," etc. The thirty-ninth section provides "that any person residing," etc., "and owing debts," etc., "being bankrupt or insolvent, or in contemplation of bankruptcy or insolvency, shall make any payment, gift, grant, sale, conveyance or transfer of money or other property, estate, rights or credits, or give any warrant to confess judgment, or procured or suffered his property to be taken on legal process, with intent to give a preference to one or more of his creditors, or to any person or persons who are or may be liable for him as endorser, bail, surety or otherwise, or with the intent, by such disposition of his property, to defeat or delay the operation of this act; or who, being a banker, broker, merchant, trader, manufacturer or miner, has fraudulently stopped payment, or who has stopped or suspended and not resumed payment of his commercial paper within a period of fourteen days, shall be deemed to have committed an act of bankruptcy," etc. From the recital of these parts of the said two sections, it is manifest that they must be construed together, particularly in proceedings in voluntary bankruptcy. To decide otherwise would be a violation of the letter as well as the spirit of the act.

The fourth cause of demurrer assigned that there is no sufficient allegation that the said payments were made in contemplation of insolvency, with intent to give a preference, etc., cannot be sustained: for the averments in the petition are that the said firm, within the period of six calendar months, within said territory, to wit, on the seventeenth day of November, eighteen hundred and seventy-one, being in contemplation of insolvency with intent to give preference, did make payments to sundry persons (naming them) and at sundry other times therein named, within said territory, and also averring that they were manufacturers, etc. A more specific compliance with the provisions of the act could not be made than is made by the petitioner.

The fifth cause of demurrer is a general one and goes to the whole petition: it, therefore, follows, from what has already been said, that it cannot be sustained.

The assertion by counsel that the notes in said petition set forth were given by said firm as publishers of said daily paper, and not as manufacturers as aforesaid, is not borne out by the allegation and averments in said petition contained. The petitioner avers that the said firm were manufacturers of books, blank books, cards, billheads, etc., as well as publishers of said paper, and also avers that said firm made said notes and delivered them, etc.; that is, they put them in circulation as commercial paper. Thereby the same became their commercial paper under the act and under the law merchant, and cannot be restricted in its character by the appliance of a technical construction such as counsel have sought to give it. Whether it was uttered by said firm as the publishers of said daily paper, or as manufacturers of books, blank books, cards, billheads, etc., it matters not, for the same being negotiable and put into circulation, either as publishers as aforesaid or as manufacturers as aforesaid, or as publishers and manufacturers as aforesaid, it becomes their commercial paper within the meaning of the bankrupt act, as well as under the law merchant. A more restricted construction would be an utter disregard of the spirit and letter of the law, and do violence to the best interests of the business community. In re Chandler [Case No. 2,591]; In re Nickodemus [Case No. 10,254]; In re Hollis [Case No. 6,621]. The term "commercial paper," within the meaning of the bankrupt act, includes negotiable notes, bills of exchange, negotiable bank checks, certificates of deposit used in commercial transactions known as the "law merchant." In this sense congress used the term in the act, and not in the restricted sense of counsel in the argument of this case. By usage and by statute, negotiable paper is to be regulated by custom and the law merchant. If a "banker, broker, merchant, trader, manufacturer or miner" allows his paper to go to protest and suspends payment for fourteen days, or if he has fraudulently stopped payment, in either case he has committed an act of bankruptcy. A fraudulent stoppage of payment is an act of bankruptcy, and his creditors may proceed against him at once, without waiting fourteen days. But when there is only stoppage or suspension of payment, without fraud, then the same must continue without resumption, fourteen days before the act of bankruptcy is complete. This provision in the thirty-ninth section is so clear that it seems strange that counsel should insist upon a different construction. In re Jersey City Window-Glass Co. [Case No. 7,292]; In re Ballard [Case No. 816]; In re Lowenstein [Case No. 8,574]; Doan v. Compton [Case No. 3,940]; Davis v. Armstrong [Case No. 3,624]; Heinsheimer v. Shea [Case No. 6,328]; In re Hollis [Case No. 6,621]. Paper not given in the ordinary course of the business of a banker, merchant, manufacturer, trader or miner, it has been held, is not commercial paper within the meaning of the act. In re Lowenstein [Case No. 8,574]; In re McDermott Patent Bolt Manuf'g Co. [Case No. 8,750]. But In re Chandler [Case No. 2,591], holds the contrary doctrine. It is sufficient, however, if the debtor's commercial paper was incurred in his character of banker, merchant, trader, manufacturer or miner. It does not matter whether the same was given for a loan of money, for goods, or to his or their employés, or otherwise, nor whether the maker, acceptor or endorser, as principal debtor or otherwise, is liable thereon, if it appear in the petition that it is the debtor's commercial paper of the class enumerated in section thirty-nine of the act. In the case at bar it so appears with sufficient averments. We must, therefore, overrule the demurrer and grant leave to the bankrupts to reply to the allegations contained in the petition.

STRICKLAND, J. The petition appears to be sufficient upon its face, and the paper is ne-

gotiable paper. Then the only question remaining is, are these parties within the purview of the law,—are they manufacturers? If so, the paper as a matter of course is their commercial paper. I believe them to be manufacturers. The demurrer is not well taken.