D. PORTER SMITH ET AL. *vs.* MAYOR AND CITY
COUNCIL OF BALTIMORE, A BODY
CORPORATE, ET AL.

*Taxation*: *Annex of Baltimore City; urban rate; Act of* 1908,
*Chapter* 286; *streets need not be public; "curbing."*

For property in the Annex of Baltimore City to be taxable at
the urban or full city rate, under the provisions of Chapter
286 of the Act of 1908, the streets or avenues dividing the
property into blocks should be *public* streets.      pp. 149-150

And such streets are *curbed*, within the meaning of the statute,
when, although they do not have a vertical curbing of stone
or other material set in the ground, they have instead gutters
lined with cobblestone rebuts.                        p. 151

*Decided April 8th, 1913.*

Two consolidated cases, containing nineteen appeals in one
record from the Baltimore City Court (HEUISLER, J.).

The facts are stated in the opinion of the Court.

The appeals were argued together before BOYD, C. J.,
BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CON-
STABLE, JJ.

*Vernon Cook,* for the appellants.

*Benjamin H. McKindless* (with whom was *S. S. Field* on
the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

These appeals, nineteen in all, are from two orders of the
Baltimore City Court, passed on the 18th day of June, 1912,
by which the property named in the orders was classified and
assessed for taxation for city purposes for the year 1912 as
urban property and liable for the full rate of city taxation.

Twelve appeals are from one order and seven are from the other. The nineteen appeals from the action of the Appeal Tax Court, by agreement of counsel, were consolidated in two cases and tried in the Baltimore City Court as one case. It was also by agreement of counsel that the appeals were transmitted to this Court in one record.

In all of these cases the property involved is within that part of Baltimore City that was annexed to it by the Act of 1888, Chapter 98, and is known as the "belt" or "annex." The twelve pieces of property in the first of these consolidated cases from the block bounded on the north by Mondawmin, on the south by Beech, on the west by Elsinore, and on the east by Roslyn avenues. The seven pieces of property in the second consolidated case are within the area bounded on the north by Mondawmin, on the south by Beech, on the west by Roslyn, and on the east by Garrison avenues. These properties, however, do not embrace the entire block.

The beds of Beech, Mondawmin, Roslyn and Elsinore avenues are macadamized, with a gutter on each side about four feet wide, the center of which is either of vitrified brick or gutter stone, and the sloping sides or rebuts are of cobble stones. On the street side the cobble stone rebut extends to the macadam, and on the other side to a grass plat three or four feet wide, beyond which is a cement sidewalk; in the grass plat trees are planted. By the plan adopted, the vertical curbing, marking extreme side of a street or avenue, which is most generally used, especially in the business section of the city, was not used by the Provident Realty Company in paving these streets or avenues and in the improvement and development of its property, but substituted for it was the cobble stone rebut that we have described, extending from the gutter stone to the grass plat.

Garrison avenue, between the tracks of the railway, is paved with vitrified brick, and on each side of the tracks, to the curbing, with sheet asphalt. This was done in the year 1911 by the City of Baltimore. The record discloses that fourteen feet and nine inches about in the center of Garrison

avenue was, by deed dated October 13th, 1896, conveyed by the Walbrook Villa Company to the Walbrook, Gwynn Oak and Powhatan Railroad Company.

The beds of Beech, Mondawmin, Roslyn and Elisnore avenues, together with other property, were in the year 1900 conveyed to the Provident Realty Company and are still owned by it, with the exception of Roslyn avenue, which by deed dated March 16th, 1911, was conveyed to the State Roads Commission until November 1st, 1912, and after that to the Mayor and City Council of Baltimore. The owners— The Provident Realty Company and the preceding owner— opened, improved and paved the above named avenues.

The Appeal Tax Court in its annual classification of property for the purpose of city taxation for the year 1912, classified all the property involved in these proceedings as urban property and subject to the highest rate of city taxation upon real and leasehold property. From this classification appeals were taken to the Baltimore City Court, as provided by statute, and that Court affirmed the action of the Appeal Tax Court in its classification of such property. It is from the orders of the City Court affirming the action of the Appeal Tax Court that these appeals are taken.

The appellant contends that this classification is wrong for the following reasons, as stated by him in his brief:

*First.* "The streets which divide this property into blocks are private streets, opened, improved, paved and maintained entirely at the expense of the land owners without any contribution from the public authorities.

*Second.* "Urban property, under the language of the Act, must be bounded by streets, opened, graded, *curbed* and otherwise improved from *curb to curb.* The streets in question are not curbed in any proper sense of the word whatsoever."

*First.* The Act of 1888, Chapter 98, under which the lands here involved were annexed to the city, provided in section 19, that "until the year nineteen hundred, the rate of taxation for city purposes upon all landed property situ-

ated within the territory which, under the provisions of this act, shall be annexed to the City of Baltimore, and upon which taxes would be paid to Baltimore county if said territory should not be annexed to the said city, shall at no time exceed the present tax rate of Baltimore county; and until the year nineteen hundred, there shall not be for the purposes of city taxation any increase in the present assessment of such property as is now assessed; * * * from and after the year 1900 the property, real and personal, in the territory so annexed, shall be liable to taxation and assessment, therefor, in the same manner and form as similar property within the present limits of said city may be liable; provided, however, that after the year 1900 the present Baltimore county rate of taxation shall not be increased for city purposes on any landed property within the said territory until *avenues, streets or alleys shall have been opened and constructed through the same,* nor until there shall be upon every block of ground so to be formed at least six dwelling or store houses ready for occupation."

The construction of this statute was before this Court in the case of *Sindall* v. *Baltimore City,* 93 Md. 526, the question in that case was, should the property there mentioned pay the full current city tax rate on its assessed value for the year 1900 and thereafter, or was it responsible only for the county rate of the year 1887, under the provisions of section 19 which we have quoted. In that case Sindall was the owner of a parcel of land within the annexed territory and within an area bounded on the north by Boundary avenue, a dedicated but an unaccepted and unimproved street, on the south by a six-foot private alley, on the east by the old York road, a county highway, and on the west by the York Turnpike road, owned and controlled by a corporation that charged and collected tolls for the use of the road. Through the middle of this land the owner, after the passage of the Annexation Act, opened a street extending from the York road to the York Turnpike, and called it Franklin Terrace, but it was unaccepted by the City at the time of the

institution of the proceedings in that case.    Sindall relied
upon the decision of this Court in the case of *Valentine* v.
*Hagerstown,* 86 Md. 486, in which the statute provided that
the property was not to be assessed or taxed for municipal
purposes "until a street should be laid out and opened
through the same," and where the Court held that before the
property could be taxed for City purposes it was necessary
that the street opened by Valentine should be accepted by
the Mayor and City Council of Hagerstown, which was not
done.    But the Court held in the *Sindall case,* JUDGE Mc-
SHERRY delivering the opinion, that the two statutes so
differed that the construction or meaning given to the statute
in the *Valentine case* could not be given to the statute in
the *Sindall case* and fully discussed the reasons therefor,
and in conclusion said:

"When that which had been 'landed property' had been
built up it became, after the year nineteen hundred, liable to
taxation at current city rates without the slightest reference
to the existence or non-existence of streets regularly laid out
by the city or dedicated by others and accepted by the city.
* * * Whenever, this formerly rural property has been laid
off in lots and houses have been erected thereon as though
built upon a street, it becomes liable to the current city tax
rate without the slightest reference to the existence of regu-
larly condemned or accepted streets but when the property
still remains rural property, then it can not be taxed as city
property until blocks have been formed by duly opened and
constructed streets and six houses are erected on each block."
In addition to this the Court likewise fully explained the
meaning of the term "landed property" as used in the stat-
ute.

An Act was passed by the succeeding Legislature of 1902
(Chapter 130) which provides: " 'Until avenues, streets or
alleys shall have been opened and constructed' shall be con-
strued to mean until avenues, streets or alleys shall have been
opened, graded, curbed or otherwise improved from curb to
curb, by pavement, macadam, gravel or other substantial

material; the words avenues, streets and alleys being herein used interchangeably. 'Block of ground' shall be construed to mean an area of ground not exceeding 200,000 superficial square feet formed and bounded on all sides by intersecting avenues, streets or alleys opened, graded, curbed and otherwise improved from curb to curb by pavement, macadam, gravel or other substantial material, as above provided."

The Act of 1888, Chapter 98, as amended by the Act of 1902, Chapter 130, was before this Court in the case of *Coulston* v. *Baltimore City,* 109 Md. 271. In that case it was contended that a turnpike road, used and graded as a street, could not be treated as one of the boundaries under said Act, in respect to which this Court said, speaking through JUDGE BURKE: "These avenues (the ones by which the block of ground in question was bounded), except Pennsylvania avenue, are public and paved avenues of the city, and there is no claim made that they are not paved as required by the Foutz Act. The block is improved by more than six dwelling houses, but the exact number and character of the houses in the block are not shown by the record. The block has the advantage of city lights. Pennsylvania avenue in front of the plaintiffs' property is owned by the Reisterstown Turnpike Company, and it is contended that this turnpike road can not be treated under the law as an intersecting boundary because, it is argued, that by the true construction of the Act mentioned none but public streets, avenues and alleys can be used as intersecting boundaries. In support of that position the defendants rely upon the case of *Valentine* v. *Hagerstown,* 86 Md. 486. That case was fully discussed in *Sindall's case, supra,* in which this Court held that it was not essential to the right of the city to impose the full tax rate that the streets and avenues bounding the block should be *public* as claimed by the appellants in this case. We regard that case as decisive of this question. Although it was expressly decided in that case that private streets might be used as boundaries of the blocks, the Act of 1902, Chapter 130, which was passed shortly after that decision for the

purpose of mitigating some of the supposed hardships, contains nothing to show the slightest intention to change the law of that case in the respect indicated. It defined the terms 'landed property,' and 'block of ground;' declared how the streets should be improved; but did not require that they should be *public* as distinguished from private."

Section 19 of Chapter 98 of the Act of 1888, as amended by Chap. 130 of the Act of 1902, was repealed and re-enacted with amendments by Chap. 286 of the Act of 1908, page 581. By the last-named Act it was made the duty of the Appeal Tax Court of said city to divide all the real and leasehold property in the annexed territory into three separate classes, to be known as *urban, suburban* and *rural property,* for the purposes of city taxation for the year 1909, and to revise said classification annually thereafter. The statute provides that "all real and leasehold property in said territory which is now legally liable to the full city taxation, and all real and leasehold property situated in said annexed territory located on a block of ground not exceeding 200,000 superficial square feet formed and bounded on all sides by *intersecting streets, avenues or alleys, opened, graded, curbed and otherwise improved from curb to curb, by payment, macadam, gravel or other substantial material* shall be classified as urban property and shall be subject to the same rate of city taxation as real and leasehold property within the old limits of said city may be subject."

It will be observed that the statute defining *urban* property is identical in terms with section 19 of Chapter 98 of the Act of 1888 as amended by the Act of 1902, Chapter 130, as to the size of the blocks and as to the streets, avenues and alleys and the character of their improvements. It is not provided therein that such streets, avenues and alleys shall be *public* and not private as claimed by the appellant, although since the passage of the Act of 1902, this Court has held in the *Coulston case,* that it was not essential to the right of the city to impose the full tax rate that the streets

and avenues bounding the block, should be *public* and not private.

The attention of the Legislature having been twice called to the rulings of this Court in respect thereto, it is fair to assume that had it been their intention that the statute should apply only to public and not private streets, avenues and alleys, it would have availed itself of the opportunity in the repeal and re-enactment of the statute to have so stated specifically.

Moreover, it will be observed that the statute in defining the second or suburban class of property, which definition we will not here set out in full as it would prolong this opinion without serving any useful purpose, speaks of *public* streets, avenues or highways upon which such property shall front or bind. And thus it can be reasonably inferred that in defining one class of property it was intended that the streets, avenues and highways should be public and not private, while in the other it was not so intended.

Independent, however, of whatever may be said of the intention of the legislators in the repeal and re-enactment of the earlier statute, we think it unnecessary to discuss further the first contention of the appellant, in view of what was held by this Court in the *Sindall's case,* as construed by this Court in the *Coulston case,* and affirmed in the latter case, for these cases are decisive of the first question here raised.

*Second.* The other contention of the appellant is, as we have said, that the avenues mentioned are not *curbed* as required by the statute, and are not, therefore, improved from *curb* to *curb*. It is true there is not, upon the extreme sides of these avenues or roadways, what is commonly called a curb, consisting of a line of stone or other material used for such purpose, set in the ground in a vertical position, but in the place of and in substitution for it, is the cobble stone rebut, which we have already described and which the record discloses takes the place and answers the purpose of a curb.

The Act of 1888, Chapter 98, provided that streets, avenues or alleys should be opened and constructed through the

property. It did not say how or to what extent the streets, when opened, should be paved or improved, but the Act of 1902, Chapter 130, provided with what material and to what extent they should be paved and improved. By it they were to be graded, curbed and paved, with one of the materials named, from curb to curb, meaning thereby that the roadway should be paved throughout its entire width, in as much as the curb, when used, is placed upon the extreme sides of the roadway; the paving and improvement was not to be less than this.

In the present case there is no curbing in the sense that we have described it, but that which is substituted for it and which is placed where the ordinary or usual vertical curbing would have been placed had it been used, is, for the purposes of this statute, to be regarded as the curb of the street. It could not have been the intention of the Legislature, nor can it be within the meaning of the Act, that the property upon a street or avenue paved and improved in the manner selected and adopted by those interested in the development of it and the property in that vicinity, and paved and improved to at least the same extent as if the curb stone, and not the rebut, had been used, should be perpetually exempt from taxation at a rate to which it would otherwise be liable had the curb stone been used.

This, however, is not the first time this question has been before this Court. In the case of *Baltimore City* v. *Rosenthal,* 102 Md. 298, the Court was called upon to decide whether or not an alley not curbed could be regarded as a boundary of a block within the meaning of the Act of 1888, Chapter 98, as amended by the Act of 1902, Chapter 130. JUDGE BOYD, in speaking for the Court, said: "If it be true that this alley was paved with cobble stones from its eastern to its western limits, it would be remarkable if the Legislature intended that the mere failure to place curb stones, either along the outside limits, or within those limits should have the effect contended for in this case. Ordinarily it is

necessary to curb a street or avenue when it is to be paved—
at least it is usually done—but it is neither necessary nor
usual to curb an alley used for such purposes as this one.
*Streets* are sometimes paved from building line to building
line with vitrified brick, or other material, without any curb
stones, and yet it can not be possible that the mere absence
of curb stones was intended to result in exempting property
in the territory annexed to Baltimore City from the paying
of taxes at the regular rates—simply because there were no
curb stones, although the street in all other respects was im-
proved as required by the statute." This case, in our opin-
ion, is decisive of the question here presented.

At the conclusion of the evidence taken in the case the
plaintiff offered three prayers and the city, five prayers. The
record does not disclose that the Court ruled upon any of
these prayers and consequently there are no exceptions to any
rulings upon the prayers, and although the record contains
the testimony taken in the case there is no bill of exceptions
signed by the Court, but we gather from the conclusion or
judgment of the Court in the passage of the orders appealed
from that the prayers of the plaintiff, predicated upon their
contentions as we have stated them, were at least regarded
by it as not properly and correctly stating the law of the
case, and we will treat them as having been rejected by it;
and as the prayers of the city state the law to be as contended
for by it and as adopted by the Court in its order, we will
treat them as having been granted by the Court.

The prayers of the plaintiff we think should have been
rejected and the defendants granted, and we find no error
committed by the Court in granting the orders appealed
from.

The orders or judgments of the Court will be affirmed.

*Orders affirmed, with costs to the appellees.*