THE HEARST CORPORATION (NEWS AMERICAN
DIVISION) *v.* STATE DEPARTMENT OF
ASSESSMENTS AND TAXATION

[No. 342, September Term, 1972.]

*Decided August 17, 1973.*

The cause was argued before Murphy, C. J., and Barnes, McWilliams, Singley, Smith, Digges and Levine, JJ.

*Robert W. Kernan* and *Edward F. Shea, Jr.,* with whom were *Sherbow, Shea & Doyle* on the brief, for appellant.

*E. Stephen Derby, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

*Amicus Curiae* brief filed by Maryland-Delaware-D. C. Press Association, Inc., *E. Dale Adkins, Jr., Henry M. Rutledge* and *Adkins, Potts & Smethurst* on the brief.

SINGLEY, J., delivered the opinion of the Court. MURPHY, C. J., and DIGGES, J., dissent and MURPHY, C. J., filed a dissenting opinion in which Digges, J., concurs at page 646 *infra.*

This case, on appeal from the Maryland Tax Court, is a reprise of *American Newspapers v. Tax Comm'n,* 174 Md. 56 [*American Newspapers v. McCardell*], 197 A. 574 (1938). It involves the same parties and presents the same issue: are the equipment and raw materials used in printing a newspaper exempt from taxation under the Baltimore City ordinance which exempts from local taxation the machinery and raw materials used in manufacturing?

*American Newspapers* held that the printing of a newspaper did not constitute manufacturing. In the 35 years which have intervened since that decision, there have been a number of significant developments. The provisions of the Baltimore City ordinance which granted the exemption have been substantially altered. The equipment used in printing a newspaper has become much more sophisticated and more fully automated. In the four jurisdictions which have considered the question since the decision in *American Newspapers,* three have flatly held that the printing of a newspaper is manufacturing. Most important of all, a year ago, in *Perdue Foods, Inc. v. State Department of Assessments & Taxation,* 264 Md. 672, 288 A. 2d 170 (1972), we concluded that a highly automated chicken processing plant was entitled to a manufacturer's exemption. It now

becomes necessary to reconsider *American Newspapers* in the light of these developments.

### The Facts

Hearst Corporation (News American Division) (Hearst) owns a plant which occupies almost an entire city block in Baltimore in which it prints The Baltimore News American, a daily newspaper. Each day, it uses between 86 and 92 tons of newsprint to print some 200,000 newspapers on weekdays and 300,000 on Sundays. There are about 1,000 employees, 300 of whom are directly involved in the printing operation, with an annual payroll in the mechanical departments of about $3,000,000.

For the year 1967, the State Department of Assessments and Taxation (the Department) assessed Hearst's plant for state and city tax purposes. The following portions of the assessment were challenged by Hearst in the petition filed by it in the Tax Court on 31 January 1968:

|  | Subject to state and city taxes | Subject to state tax only |
|---|---|---|
| Manufactured products and raw material [consisting principally of Hearst's entire inventory of newsprint] | $170,440.00 | $113,620.00 |
| Tools and machinery [which the Department maintained were not used in manufacturing] | 3,110,900.00 | |
|  | 3,281,340.00 113,620.00 | |
| Total | $3,394,960.00 | |

Hearst argued that the raw material assessment included its entire inventory of newsprint, some of which was located in its plant, some in boxcars on its railroad siding, and some in storage warehouses, which when averaged over the year amounted to a 17.6 days' supply for the year 1967. This, Hearst argued, was not only contrary to the Department's prior practice, which involved an assessment of a 7 days' supply apparently reached by compromise,[1] but was an unconstitutional imposition. Its argument was that since all of the newsprint was imported from either Canada or Finland, the taxation of more than was required for its immediate needs violated the prohibition against a state's levying imposts on imports contained in the United States Constitution, Article I, Section 10, Clause 2, see *Youngstown Sheet & Tube Co. v. Bowers*, 358 U. S. 534, 3 L.Ed.2d 490, 79 S. Ct. 383 (1959) and *Virtue Bros. v. County of Los Angeles*, 239 Cal. App. 2d 220, 48 Cal. Rptr. 505 (1966), *cert. denied*, 385 U. S. 820, 17 L.Ed.2d 58, 87 S. Ct. 45 (1966).

Hearst also challenged the assessment of what it regarded as manufacturing tools and machinery and raw materials on the basis not only that they were exempt from taxation in the hands of the manufacturer under the Baltimore City ordinance but also on the ground that similar machinery and materials in the hands of other printers were customarily granted an exemption from taxation by the Department. As Hearst saw it, this was an unlawful discrimination in violation of the Fourteenth Amendment to the Constitution of the United States and of Article XV of Maryland's Declaration of Rights.

By the time the matter was considered by the Tax Court, Hearst's assessments for the years 1968, 1969 and 1970 were also before it and were consolidated with the petition which attacked the 1967 assessment. The amounts of the several assessments need not be considered; they are of consequence only because in each successive year, the Department

---

1. This had been approved by the Tax Court in Hearst Consolidated Publications, Inc. v. State Department of Assessments & Taxation, TPC Nos. 180, 224, 2 CCH Maryland State Tax Rptr. ¶ 200-455 (1965).

followed the approach which it had adopted for the year 1967.

By its order, the Tax Court affirmed the assessments entered by the Department for the years 1967-1970, excepting only the item "manufactured products and raw materials" which it modified by including in the assessable basis an 11 days' supply of newsprint, rather than an average of Hearst's entire inventory of newsprint, annualized for each of the years. As a practical matter, this had the effect of reducing the 1967 figures of $170,440.00 and $113,620.00 adopted by the Department to $77,150.00 and $51,430.00, respectively, and of correspondingly reducing the comparable figures for each of the succeeding years.

Hearst appealed from the Tax Court order, mounting its heaviest attack on the denial of the manufacturer's exemption, primarily because, should this be successful, it would carry with it an exemption of the entire inventory of newsprint as a raw material used in manufacturing.

The Department entered a cross-appeal, its argument being that Hearst's entire average inventory of newsprint, and not simply an 11 days' supply was properly taxable.

### The Issues

On appeal to us, Hearst raises three questions:

"I. The printing of a newspaper which uses over $5,000,000 worth of specialized machinery and equipment, employs over 300 persons in its mechanical departments, generating a mechanical department payroll in excess of $3,000,000 annually and which each day transforms between 86 and 92 tons of raw newsprint into over two hundred thousand individual newspapers from that newsprint constitutes 'manufacturing' as that term is used in Article 81, Section 9, Sub-Sections 23 and 24 of the Annotated Code of Maryland (1957, 1969 Repl. Vol.) and Article 28, Section 83 of Baltimore City Code (1966 Edition).

"II. The withholding of a manufacturer's tax exemption from the News American but granting such an exemption to job printers which use the same machinery and raw materials, produce the same products as the News American, and are in competition with the News American for advertising revenue, discriminates unfairly against the News American and therefore deprives it of the equal protection of the laws and unlawfully infringes upon freedom of the press in violation of the Fourteenth and First Amendments to ·the Constitution of the United States and Articles 15, 23, and 40, of the Declaration of Rights to the Constitution of the State of Maryland.

"III. The Tax Court erred in not receiving evidence of increased mechanization which was planned during but not put into use until shortly after the end of the taxable period."

## The Ordinance

Baltimore City Code (1966) Art. 28, § 83 (a) (the Ordinance) provides, in part:

*"Tax exemption formula.* In order to encourage the growth and development of manufacturing industries in Baltimore City and thereby promote the general welfare of the inhabitants of said City, machinery and equipment used in the pasteurization, and processing of milk, laundry and dry cleaning machinery and equipment when employed or used in the business of laundering and dry cleaning, and all mechanical tools or implements, whether worked by hand or steam or other motive power, machinery, manufacturing apparatus or engines, actually and directly employed in the manufacturing process of a manufacturer, raw material on hand, and manufactured products in the hands of the

manufacturers, shall be exempt from taxation for all ordinary municipal purposes of the Mayor and City Council of Baltimore . . . ."

It should be noted that the· exemption is extended to tools and machinery, not to the taxpayer.

This should be carefully compared with the text of the ordinance which was considered by our predecessors in *American Newspapers, supra,* 174 Md. at 58. Then, Baltimore City Code (1927) Art. 46, § 80 provided, in part:

"The Appeal Tax Court is authorized and directed upon the application, as hereinafter provided, of any individual, firm or corporation, actually engaged in the business of manufacturing articles of commerce in the City of Baltimore, to abate any and all personal taxes which may be levied hereafter by authority of the Mayor and City Council of Baltimore for any of the corporate uses thereof, upon any mechanical tools or implements, whether worked by hand or by steam or other motive power, or upon any machinery or manufacturing apparatus owned by such individuals, firm or corporation and actually employed and used in the business of manufacturing articles of commerce in the said city; provided, that *this section shall not be construed as exempting* any manufacturing apparatus, tools or machinery used in the business of manufacturing or generating illuminating gas for sale or any manufacturing apparatus, tools and machinery used in the business of generating or producing for sale electric light or electricity to be used as motive power or for any other purpose, or *any manufacturing apparatus, tools, type or machinery used in the preparation, printing or issuing, by the printers or publishers thereof, of any daily journal or other periodical publication.*[2] (Emphasis supplied)

2. Language similar to that which is italicized first appeared in

Both of these ordinances were enacted pursuant to enabling legislation which has a venerable history in this State, see *Kimball-Tyler v. Baltimore City*, 214 Md. 86, 90-93, 133 A. 2d 433 (1957). At the time of the enactment of the Ordinance which was before the Tax Court, the provision was found in Maryland Code (1957, 1969 Repl. Vol.) Art. 81, § 9 (23) and § 9 (24).

The first subsection provided, in part:

"(23) *Tools, implements, etc. used in manufacturing or farming.* — Tools (including mechanical tools), implements, whether worked by hand, steam or other motive power, machinery, manufacturing apparatus or engines used in manufacturing, whether temporarily idle or not, in any county or city, as herein defined (including the City of Baltimore), whether exempted by the county in which said city is located or not, in any political subdivision in which by law, resolution or ordinance the same are or may be exempt from county or city taxation; and the county commissioners of any county and any city, as herein defined, including the mayor and city council of Baltimore, are hereby authorized to pass such resolution or ordinance."

The other subsection provided, in part:

"(24) *Raw materials and manufactured products of manufacturers.* — Raw materials on hand and manufactured products in the hands of the manufacturer in any city and/or county in which by law, resolution or ordinance the same are or may be exempt from county and/or city taxation; provided that nothing in this subsection shall

---

Ordinance No. 71 of the Mayor and City Council, enacted in 1893, and survived until it was omitted by Ordinance 52 (1944), which added an exemption of machinery used in processing of milk; see Ordinance 1503 (1950-51) Baltimore City Code (1950) Art. 37, § 50; Ordinance 643 (1956-57) added machinery used in laundering; Ordinance 752 (1965-66), machinery used in dry cleaning.

exempt any such property from State taxation or from assessment therefor." [3]

Thirteen years before *American Newspapers,* our predecessors considered and rejected a manufacturer's exemption claimed by a publishing firm in *H. M. Rowe Co. v. Tax Comm'n,* 149 Md. 251, [*H. M. Rowe Co. v. Beck*] 131 A. 509 (1925). Faced with an agreed statement of facts that the Rowe Company was engaged in the preparation of manuscripts which were printed and bound by others, the Court concluded that Rowe was not engaged in manufacturing. In the course of the opinion which Judge Offutt wrote for the Court, we find the following:

"But even if its business could be. considered as like in its essential features to that of a newspaper, it does not necessarily follow that it is manufacturing, because *a newspaper which merely gathers news and assembles it,* together with such other matter as it deems suited to the tastes and demands of its readers, in final form, and then sends it to be actually printed and made ready for sale by others, *is not in the same class as a newspaper which does that work on its own machinery and with its own labor.*

"It may be conceded, without however so deciding, that the business of printing, binding and preparing for use or sale by manual or mechanical labor, books, pamphlets, forms, stationery and similar articles, is manufacturing, but that concession alone cannot help the appellant, because it does none of those things itself, but has them done by others; and it can only avail the appellant if it be also conceded that in doing that work by the hands of another it does it itself." 149 Md. at 260-61 (Emphasis supplied)

---

**3.** While §§ 8A and 9 of Art. 81 were repealed by Chapter 350 of the Laws of 1972, effective 1 July 1972, and new §§ 9, 9A, 9B, 9C and 9D were substituted, comparable provisions appear in Code (1957, 1969 Repl. Vol., 1972 Cum. Supp.) Art. 81, § 9A (c),(1) and (5) and § 9A (d) (1) and (4).

Earlier in the opinion appears a definition which has threaded its way through later opinions of this Court:

" 'Manufacture' as used in those statutes is a plain word in every day use, and as ordinarily understood means the process of converting some material into a different form adapted to uses to which in its original form it could not be so readily applied, and is associated nearly always with the use of manual or mechanical energy, and it is not ordinarily used to describe the creation of products by labor entirely or mainly intellectual, literary, or clerical in character." 149 Md. at 258

In *Baltimore v. Hanover Shirt Co.*, 168 Md. 174, [*Mayor and City Council of Baltimore v. Price*] 177 A. 160 (1935), the Court reviewed the definitions of the term "manufacture" which appeared in the earlier cases:

"In *Carlin v. Western Assurance Co.*, 57 Md. 515, 526, [1882] in discussing the meaning of that word, this Court said: 'Its meaning has expanded as workmanship and art have advanced, so that now nearly all artificial products of human industry, nearly all such materials as have acquired changed conditions or new and specific combinations, whether from the direct action of the human hand, from chemical processes devised and directed by human skill, or by the employment of machinery, which after all is but a higher form of the simple implements with which the human hand fashioned its creations in ruder ages, are now commonly designated as "manufactured." ' "

"In *Carroll County v. Shriver Co.*, 146 Md. 412, 417, 126 A. 71, 72, [1924] this court, in an opinion rendered by Judge Pattison, said: 'It is difficult to say in the abstract what is and what is not a manufacturing industry. What might be a manufacturing industry when defined or construed in connection with a statute exempting tools,

machines, engines, etc., from taxation, might not be so held when considered in connection with a statute having a different object or purpose. As said in 26 *Cyc.* 524: "There is of course a multitude of cases in which particular industries and products have been held respectively to be or not to be manufactured, but it would be useless to cite these cases under the names of the industries or products there the subject of decision; * * * since the fact that a given thing or industry has been held to be manufactured under one set of circumstances is no assurance that it will be so held under another." ' " 168 Md. at 179-80

Judge W. Mitchell Digges, writing for the Court in *Arnreich v. State,* 150 Md. 91, 132 A. 430 (1926), after reviewing *Carlin v. Western Assurance Co., Carroll County v. Shriver Co.* and *H. M. Rowe Co. v. Tax Comm'n,* all *supra,* concluded: .

"The citation of authorities, as stated, as to what does and what does not constitute manufacturing or what does or does not constitute a person a manufacturer, is of little value in determining the instant case, for the reason that all the decided cases have had to do with many different statutes with varying purposes to be accomplished; and, without citing numerous cases which have held *pro* and *con* on this subject, it is sufficient to say that we do not regard the occupation of the appellants, as disclosed by the record, as that of manufacturing." 150 Md. at 101

We can only speculate where the Department's long-standing custom of granting manufacturers' exemptions to job printers found its genesis, *Tax Commission v. Standard Oil Co.,* 181 Md. 637, 642, 31 A. 2d 621 (1943). The simple fact is that it was well rooted when this case came before the Tax Court, as was abundantly illustrated by the Department's stipulation that manufacturers' exemptions were granted to photoengravers, typesetters, composition

firms and printers in Baltimore. There was testimony that at least one of the printing firms printed newspapers for its customers.

As we indicated early on, at the time *American Newspapers* reached this Court, the Baltimore City ordinance specifically prohibited the granting of a manufacturer's exemption to machinery used by newspaper publishers. Obviously, in *American Newspapers* the Court was troubled by an issue raised by the appellant: to validate the provision of the ordinance denying the exemption to newspapers, in the face of a long-standing administrative practice of granting the exemption to printers who used virtually the same equipment and performed substantially similar functions, would be to legitimate a constitutionally impermissible classification. The Court intimated this when it said in *American Newspapers*, 174 Md. at 58-59:

> "The plain meaning of this [the enabling act] is that the city could not exempt some manufacturing businesses and exclude others from the benefit of the act, but that the ordinance should be general in its nature, and whatever the property exempted, it should be to all manufacturers alike. The exception of 'any journal or other periodical' does not depend on the ordinance, but whether in fact it is a 'manufacturing business,' within the meaning of the statute."

It seems plausible that the Court chose to flank the issue by grounding its conclusion on the notion that printing newspapers was not manufacturing, which relieved it of the necessity of considering the proscriptive provision of the ordinance. Relying on a melange of decisions, which we shall analyze after a bit, the Court concluded that the printing of a newspaper did not constitute manufacturing, overlooking most of the discussion in *Rowe*, which we have quoted heretofore.

Two cases were cited in support of the proposition that the publishing of a newspaper does constitute manufacturing: *Matter of Kenyon and Fenton*, 1 Utah 47 (1876), which held

that the partnership which published a newspaper was engaged in manufacturing and that its note was therefore commercial paper under the Bankruptcy Act; and *State v. Dupre*, 42 La. Ann. 561, 7 So. 727 (1890) where a divided court held the publishers of a newspaper were manufacturers and not subject to a license tax.

Ranged against these were *Patterson v. City of New Orleans*, 47 La. Ann. 275, 16 So. 815 (1895), a clearly inapposite holding that a printer of billheads and order forms was not a manufacturer; *In re Capital Publishing Co.*, 3 MacArthur (10 District of Columbia) 405 (1879), another bankruptcy case [4] and *Evening Journal Ass'n v. State Board of Assessors*, 47 N.J.L. 36 (1884); *Press Printing Co. v. Assessors*, 51 N.J.L. 75, 16 A. 173 (1888); *City of Lexington v. Lexington Leader Co.*, 193 Ky. 107, 235 S. W. 31 (1921); all narrow holdings that publishing a newspaper was not manufacturing for the purpose of the applicable exemption statutes; and finally, *Oswald v. St. Paul Globe Publishing Co.*, 60 Minn. 82, 61 N. W. 902 (1895), that newspaper publishing was not exclusively manufacturing for the purpose of a statute imposing double liability on stockholders.

### Developments in the Industry

Hearst makes much of the fact that there have been dramatic changes in the technology utilized in the printing of newspapers, particularly in the last 10 years. In the circumstances here, the Tax Court, quite properly, we think, limited its consideration to the changes which had occurred prior to or during the taxable periods involved in the case, and declined to consider changes which were planned or contemplated, and later put in effect. As the Department points out, the Tax Court is not bound by the technical rules of evidence but must observe the basic rules of fairness, *Fairchild Hiller v. Supervisor*, 267 Md. 519, 523-24, 298 A. 2d

---

4. "[A newspaper] does not come within the popular meaning of the term 'manufacture,' unless, indeed, when its contents are slenderly endowed with the truth, or when its articles appear to be made out of whole cloth," 10 District of Columbia Reports at 414.

148 (1973). We see nothing unfair in the position taken by the Tax Court.

Without going into unnecessary detail, what Hearst relied upon was its introduction of a photo composition technique to produce plates for the printing of advertising material in place of the manually operated hot metal casting machines theretofore used. While editorial material was still composed by the use of hot metal line casting machines, these were activated by perforated tapes run through a non-memory computer which automatically hyphenated and justified the columns. The semicylindrical plates used on the presses were similarly cast by automated equipment.

An interesting comparison can be developed from an examination of the elaborate stipulation of facts printed in *American Newspapers.* While circulation figures have remained relatively constant, it would seem that some 397 people were employed in the mechanical departments then to do the work which 300 did at the time the case was before the Tax Court.

There was testimony in this case as regards the increasing use (from 27% of advertising supplements in 1966 to 42% in 1969) of "preprints": advertising supplements which are printed, frequently in color, by job printers on tax-exempt equipment on order of the advertiser (at a lesser cost) and then delivered to Hearst for insertion in its newspapers.

While we do not regard the introduction of sophisticated automated equipment as necessarily determinative of the issues before us, the nature and size of the mechanical operation is certainly an element to be considered.[5] As we said in *Macke Co. v. State Department of Assessments & Taxation,* 264 Md. 121, 129-30, 285 A. 2d 593 (1972), whether a particular operation is "manufacturing" depends on two factors: "[t]he scale and character of the operation" and "[t]he common understanding of the word." There can be no

---

5. In Paramount Photo Service and Supply, Inc. v. State Department of Assessments & Taxation, TPC No. 314, 2 CCH Maryland Tax Rptr. ¶ 200-564 (1968), the Tax Court itself abandoned 32 years of administrative practice and granted a manufacturer's exemption to a film processor who had invested $120,000.00 in equipment, employed 7 persons, and processed 15,000 negatives each day.

doubt that Hearst meets the first test; the knotty problem is whether it meets the second.

### The Recent Decisions

We have been referred to four cases decided since *American Newspapers: Advertiser Publishing Co. v. Fase,* 279 F. 2d 636 (9th Cir.1960); *Garnett Publishing Co. v. Kirchner,* 1 Kansas Tax Cases CCH ¶ 200-207 (1960); *Messenger Pub. Co. v. Board of Property Assessment, Etc.,* 183 Pa. Sup. 407, 132 A. 2d 768 (1957); *State v. Advertiser Co.,* 257 Ala. 423, 59 So. 2d 576 (1952).

The first case, *Fase,* noted that the mechanical aspects of the production of a modern newspaper far outweigh the intellectual and creative effort of other times, with the consequence that the newspaper business might reasonably be considered a manufacturing enterprise, 279 F. 2d at 638, footnote 4a, but found no manifest error in the territorial court's refusal to impose a tax on a newspaper's *advertising revenues* at the lower rate applicable to manufacturers.

The last three cases flatly held the printing of a newspaper to be manufacturing.

### The Impact of Perdue

In *Perdue Foods, Inc. v. State Department of Assessments & Taxation, supra,* 264 Md. 672, decided a little more than a year ago, we were faced with a dilemma which is no stranger to an appellate court: that of reconciling two of the earlier decisions of this Court: that of *Carroll County v. Shriver Co., supra,* 146 Md. 412, with that of *Arnreich v. State, supra,* 150 Md. 91. In *Shriver,* our predecessors held that a cannery was entitled to a manufacturer's exemption; in *Arnreich,* it was concluded that a fishmonger, who cleaned fish and shucked oysters, which he sold at retail; and that two butchers, who bought carcasses and cut them into pieces for sale, were not manufacturers and consequently were required to have trader's licenses.

Perdue Foods operated a highly mechanized chicken processing plant which employed 700 people working in shifts, using machinery and equipment which represented an

investment of some $800,000.00. The plant had the capability of processing 12,000 chickens an hour by placing them on 2 conveyor lines, where they were automatically killed, picked, washed, eviscerated, chilled and graded.

The State staked its hopes on *Arnreich*, and found comfort in what Judge W. Mitchell Digges said there for the Court, 150 Md. at 101:

"[I]t will be seen that what the appellants did was not the application to material of labor or skill whereby the original article is changed to a different and useful article, but it remained, after the labor and skill had been applied, the same article, not a different one, to be used for the same purpose, not a different one; and further, that the cutting up or dividing of a carcass of lamb or veal into smaller portions, which may be known as steaks or chops, is not the kind of process which is popularly known and regarded as manufacturing. We, therefore, do not regard the appellants, or either of them, as manufacturers in the sense that would relieve them from the necessity of obtaining a trader's license."

and on an opinion of Judge Oppenheimer, later a member of this Court, in *William Schluderberg-T. J. Kurdle Company v. State Tax Commission* in the Circuit Court No. 2 of Baltimore City (1956), where Judge Oppenheimer, relying on *Arnreich*, said, "Butchering is butchering, whether carried on by one person or by a hundred" and denied the manufacturer's exemption.

Perdue Foods, on the other hand, likened its operation to the Shriver Company's cannery, where the Court concluded, *Shriver, supra*, 146 Md. at 418:

"[W]e cannot escape the conclusion, upon the reasoning of *Carlin v. West Assurance Company* [57 Md. 515 (1882)], that it was foreign to the intention of the Legislature that the industry here involved should not be regarded as a manufacturing

industry within the meaning of that law, especially when we consider the condition of the corn, in the husk and on the cob, when received by the appellee, and what was thereafter done by the appellee, at great cost to it and with much benefit to others, through intricate and expensive machinery before placing the corn in cans, which cans thereafter became an essential part of the product, in that by their use only could the corn in its new and changed condition be preserved."

We concluded that the nature and size of Perdue Foods' operation brought it within the exemption statute.

Early on, we referred to *Carlin v. West Assurance Company, supra,* 57 Md. at 526, which acknowledged that manufacturing is ". . . but a higher form of the simple implements with which the human hand fashioned its creations in ruder ages . . . ."

Printing a newspaper on a hand-operated flat-bed press in the 18th or 19th century may not have been manufacturing, but simply the dissemination of information. The *American Newspapers* court may well have divined legislative intent in the exclusionary clause of the ordinance before it, and in an excess of caution, posited its result on a firmer footing. Here, however, we are faced with a different Ordinance, which not only does not deny the printer or publisher of a newspaper an exemption, but specifically exempts machinery and equipment used in the processing of milk and laundering and dry cleaning. As the superior court noted in *Messenger Pub. Co. v. Board of Property Assessment, Etc., supra,* at 769: "It would seem that the ordinary man would think of a newspaper as an industrial plant, especially if one were to tell him that a laundry or a carpet cleaning company are such for the purpose here being considered." It is interesting to note that neither milk processing nor laundering nor dry cleaning by the great weight of authority is considered manufacturing. Milk: *Rieck-McJunkin Dairy Co. v. School Dist. of Pittsburgh,* 362 Pa. 13, 66 A. 2d 295 (1949); *Suabedissen-Wittner Dairy v. Department of*

*Treasury*, 105 Ind. App. 626, 16 N.E.2d 964 (1938); *Louisville v. Ewing Von-Allmen Dairy Co.*, 268 Ky. 652, 105 S.W.2d 801 (1937); *Richmond v. Richmond Dairy Co.*, 156 Va. 63, 157 S. E. 728 (1931); *People ex rel. Empire State Dairy Co. v. Sohmer*, 218 N. Y. 199, 112 N. E. 755 (1916). Laundry or dry cleaning: *Pellerin Laundry Machinery Sales Co. v. Cheney*, 237 Ark. 59, 371 S.W.2d 524 (1963); *Commissioner of Corp. and Taxation v. Assessors of Boston*, 321 Mass. 90, 71 N.E.2d 874 (1947); *Franklin-American Laundry & Dry Cleaning Co. v. Tax Comm'n*, 14 Ohio L. Abs. 357, *error dismissed*, 126 Ohio St. 472, 186 N. E. 370 (1933); *Muir v. Samuels*, 110 Ky. 605, 62 S. W. 481 (1901). *Compare Grand Family Laundry v. Mayor & City Council of Baltimore*, 134 Md. 99, 106 A. 254 (1919).

This recalls what Judge Prescott said for the Court in *Maryland State Fair v. Supervisor*, 225 Md. 574, 588, 172 A. 2d 132 (1961):

> "This Court has said many times (and Section 9 so provides with reference to exemptions thereunder) that tax-exemption statutes are to be strictly construed, but a strict construction permits a fair one, so as to effectuate the legislative intent and objectives, and it does not require that an unusual or unreasonable meaning be given to the words used in an exemption statute. *State Tax Comm. v. Standard Oil Co.*, 181 Md. 637, 640, 31 A. 2d 621; *State Tax Comm. v. Whitehall*, 214 Md. 316, 320, 135 A. 2d 298."

In short, we think that the result in this case, in the light of the disappearance from the Ordinance of the exclusory language and the extension of the exemption, is that mandated by *Perdue*, and not by *American Newspapers*, which must be restricted to the posture in which that case reached the Court. While we think *American Newspapers* is distinguishable, we are mindful of an earlier observation:

> "The doctrine of *stare decisis*, important as it is, is not to be construed as preventing us from

changing a rule of law if we are convinced that the
rule has become unsound in the circumstances of
modern life," *White v. King*, 244 Md. 348, 354, 223 A.
2d 763 (1966).

## The Constitutional Question

The result which we reach relieves us of the necessity of
blazing a trail through the constitutional thicket. In passing,
however, we have serious doubts that the granting of a
manufacturer's exemption to equipment owned by job
printers who use the same materials and in some instances,
at least, produce the same product, while at the same time
denying Hearst a manufacturer's exemption, can be
justified. Admittedly, classifications are premissible, but
they must be rational and not arbitrary, *Allied Stores of
Ohio, Inc. v. Bowers*, 358 U. S. 522, 527-28, 3 L.Ed.2d 480, 79
S. Ct. 437 (1959); *City of Chicago v. Ames*, 365 Ill. 529, 7 N. E.
2d 294 (1937).

We cannot regard as constitutionally tenable an
administrative interpretation of the Ordinance which results
in the granting of a manufacturer's exemption to job
printers who print newspapers for others, and print the
advertising supplements which are interleaved in Hearst's
newspapers, while denying Hearst the same exemption.

## Legislative Intent

The Department makes much of the fact that 35 years
have passed since the decision in *American Newspapers*,
without any effort on the part of Baltimore's City Council to
negate or modify the thrust of that opinion. We are not
impressed by this, because to us, there are alternative
rationalizations, both equally palatable. On the one hand,
one could assume that the City Council, accepting the result
in *American Newspapers*, concluded that a statutory
exclusion of printers of newspapers from the umbrella of
manufacturers' exemptions was no longer necessary. The
counterpoint, which we regard as equally credible, is that
the Council, when it determined to extend the exemption to
machinery used in milk processing, laundering and dry

cleaning, determined to drop the exclusionary language which the prior ordinance had contained, in order that the Ordinance might be more liberally construed.

We remain unpersuaded that any reliance can be placed on the doctrine of legislative acquiescence since this notion is apposite, if at all, to a judicial interpretation which runs contrary to legislative purpose:

"Such nonaction by Congress [failure to act after an adverse court decision] affords the most dubious foundation for drawing positive inferences," *United States v. Price*, 361 U. S. 304, 310-11, 4 L.Ed.2d 334, 80 S. Ct. 326 (1960).

"But the doctrine of legislative acquiescence is at best only an auxiliary tool for use in interpreting ambiguous statutory provisions," *Jones v. Liberty Glass Co.*, 332 U.S. 524, 533-34, 92 L. Ed. 142, 68 S. Ct. 229 (1947).

On the contrary, the idea that reliance need not always be placed on an interpretation adopted before a statute is substantially amended is germane to this case:

"[The] rule [that statutory re-enactment is an adoption of prior interpretation] is no more than an aid in statutory construction. While it is useful at times in resolving statutory ambiguities, it does not mean that the prior construction has become so embedded in the law that only Congress can effect a change," *Helvering v. Reynolds*, 313 U. S. 428, 432, 85 L. Ed. 1438, 61 S. Ct. 971 (1941).

*See* 1 A Sutherland, *Statutory Construction* § 22.35 at 197 (3d ed. Sands ed. 1972).

## The Cross-Appeal

It will be remembered that the Department entered a cross-appeal from the Tax Court's order, arguing that Hearst's entire inventory of newsprint, and not simply an 11 days' supply, should be included in Hearst's assessable basis.

The result which we reach makes unnecessary an extensive consideration of this point. Having concluded that Hearst's mechanical operation constitutes manufacturing, and that its tools and machinery used in manufacturing are exempt, it naturally follows that under the terms of the Ordinance, its inventory of raw materials is similarly exempt.

> *Order of 1 November 1972 reversed; case remanded for entry of an order conformable to the views expressed in this opinion; costs to be paid by appellee.*

*Murphy, C. J., dissenting:*

Agreeing with the majority's opening statement that "[t]his case is a reprise of *American Newspapers v. Tax Comm'n*, 174 Md. 56 [*American Newspapers v. McCardell*], 197 A. 574 (1938)," but disagreeing with the majority's treatment of that precedent, I dissent.

In *American Newspapers*, this Court, cognizant of the fact that "[t]he appellant has a plant containing much valuable machinery and employing a large number of people in the printing and publishing of the two newspapers," but basing its decision on "... the *character* of the work done in the operation of his publishing business" (emphasis added), held that the publishing of a newspaper did not constitute manufacturing. It may be of some significance to note that there is no reason to believe the equipment used in 1938 was not as sophisticated and automated as the existing technological plateau would permit. But it is clear a comparison of the facts contained in the record extracts in *American Newspapers* and in the instant case shows that "the character of the work done" has not changed. The basis processes and machinery remain the same; the differences are ones of degree and of dollar amounts occasioned by technological advances in the intervening years. Nor does it appear that the second factor cited by the majority, the common understanding of the word manufacturing, has

changed since we observed in *American Newspapers* that "it had not occurred to many persons that newspapers are made in a factory." 174 Md. at 60, 197 A. at 576. *See, Perdue v. St. Dep't of Assess. & T.,* 264 Md. 228, 236-38, 286 A. 2d 165, 169-70 (1972). On the purely factual level, therefore, there appears to be no basis for a change from our earlier decision.

More importantly, sound rules of statutory construction preclude a shift in position by this Court. Our holding in *American Newspapers* was not grounded on the subsequently deleted provision of the Baltimore City ordinance which expressly excluded from the tax exemption "manufacturing apparatus, tools, type or machinery used in the preparation, printing or issuing, by the printers or publishers thereof, of any daily journal or other periodic publication." At the time of *American Newspapers*, Baltimore City's authority to grant exemption from local taxation was only that specifically conferred by the General Assembly, by public general law (then Maryland Code, Article 81, § 7 (25) and (26)) and public local law (then Article 4, § 6 (28)(c)), both of which authorized the Mayor and City Council to exempt from local taxation property used in manufacturing. On the basis of these enabling acts and the general language of the ordinance, we refused the appellant the exemption, expressly noting:

> "The exception of 'any journal or other periodical' does not depend on the ordinance, but whether in fact it is a 'manufacturing business,' within the meaning of the statute." 174 Md. at 59, 197 A. at 575.

Our judicial construction of "manufacturing business" as not including newspaper publishing became, by long-honored rules of statutory construction, a binding interpretation on this Court. "Decisions of this court construing the statute become part of the statute and continue to be so unless and until changed by statute." *Shriner v. Mullhausen,* 210 Md. 104, 115, 122 A. 2d 570, 575 (1956). *See also, Stack v. Marney,* 252 Md. 43, 49, 248 A. 2d 880, 884 (1969); *Smolin v. First Fidelity Ass'n.,* 238 Md. 386,

393, 209 A. 2d 546, 549 (1965); *Nutwell v. Board of Supervisors of Elections*, 205 Md. 338, 343, 108 A. 2d 149, 151 (1954); *Sonnenburg v. Monumental Motor Tours*, 198 Md. 227, 233, 81 A. 2d 617, 620 (1951); *Smith v. City of Baltimore*, 120 Md. 143, 87 A. 824 (1913); *Jackson v. Jackson*, 13 Md. App. 725, 284 A. 2d 654 (1971).

In the thirty-five year interval since the *American Newspaper* case, there has been no legislative action showing an intent to change the result reached in that case. I cannot acquiesce in the majority's supposition that the City Council, in dropping the specific exception which the ordinance contained at the time of *American Newspapers*, thereby intended the ordinance to be more liberally construed with respect to newspapers. The language of the specific exception was not what prevented a "liberal construction" in *American Newspapers;* the term "manufacturing," in the context of the ordinance, has not been significantly changed by any of the subsequent amendments to the ordinance. Nor has the General Assembly manifested an intention to alter the construction we placed on the term "manufacturing" in *American Newspapers. See,* Maryland Code (1957, 1969 Repl. Vol.) Article 81, § 9 (23) and (24). Moreover, in 1965, the General Assembly added a definition of manufacturing which does not include newspaper publishing, Article 81, § 2 (25). As we noted in *Perdue Foods, Inc. v. State Dept. of Assessments & Taxation,* 264 Md. 672, 689, 288 A. 2d 170, 179 (1972): "From this failure to define, the inference is drawn that the Court's determination of legislative intent in ... [a previous decision of this Court] meets with the approval of the General Assembly." I, therefore, fail to see *any* evidence on the part of the legislative bodies, either State or local, to change the result reached in our previous decision, and, therefore, would vote to abide by it.

I think the Court should have reached and decided the constitutional issue. I add only that I am not persuaded by the brief *dicta* contained in the majority's treatment of the equal protection question. An administrative interpretation, while entitled to weight, is not binding on this Court, *Stuart v. Board of Supervisors of Elections,* 266 Md. 440, 449, 295 A.

2d 223, 228 (1972). More importantly, without consideration of the differences between job printers and newspaper publishers in light of the purpose behind the classification, no legitimate judgment can be made of its constitutionality.

I would vote to affirm the order of the Maryland Tax Court. I am authorized to state that Judge Digges concurs in this opinion.